STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

John P. HUNT, Defendant-Appellant.

Supreme Court

*No. 01–0272–CR. Oral argument April 9, 2003.—Decided July 2, 2003.*

2003 WI 81

(Also reported in 666 N.W.2d 771.)

1

4

For the plaintiff-respondent-petitioner the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *Rex R. Anderegg* and *Anderegg & Mutschler, LLP,* Milwaukee, and oral argument by *Rex R. Anderegg.*

¶ 1. N. PATRICK CROOKS, J. This is a review of a court of appeals' decision, which reversed the circuit court's conviction of John P. Hunt (Hunt) on six criminal counts, including two counts of first-degree sexual assault of a child, one count of repeated sexual assault of the same child, one count of first-degree sexual assault causing pregnancy of a child, one count of

exposing a child to harmful materials, and one count of second-degree sexual assault by use of force.[1]

¶ 2. This court is presented with the following issues: (1) Does a circuit court commit reversible error if it fails to provide a detailed *Sullivan*[2] analysis for admitting other-acts evidence? (2) Is an appellate court required to perform an independent review of the record for permissible bases for admitting other-acts evidence if the circuit court fails to adequately provide a *Sullivan* analysis, or alternatively states an impermissible basis for the admission of such evidence? (3) Is an appellate court required to reverse a defendant's convictions on all counts if the circuit court states an improper basis for the admission of other-acts evidence? (4) Is the court afforded greater latitude when applying the *Sullivan* analysis in cases dealing with sex crimes, especially where a child victim is involved?

¶ 3. We hold that the appellate court erred in reversing the conviction of Hunt on all six counts. Accordingly, we reverse the decision of the court of appeals. Although the circuit court could have provided a more detailed or exhaustive *Sullivan* analysis for admitting the other-acts evidence in this case, reversal was not appropriate here.

¶ 4. Additionally, pursuant to the well-established independent review doctrine in Wisconsin, we hold that the court of appeals is required independently to review the record if the circuit court fails to provide a detailed *Sullivan* analysis. Based upon our independent review of the record, we hold that there were reasonable bases justifying the circuit court's decision to admit the other-

---

[1] The complaint alleged Tiffany J. was the victim of counts one through five, and Angelica J. the victim of count six.

[2] *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

acts evidence pursuant to *Sullivan.* The other-acts evidence was properly admitted pursuant to Wis. Stat. § 904.04(2) (1999–2000)[3] to prove motive, opportunity, intent, absence of mistake or accident, and context.[4] The circuit court properly admitted the other-acts evidence to provide the necessary background for understanding Hunt's behavior and to provide an indepen-

---

[3] Wisconsin Stat. § 904.04(2) provides:

(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[4] THE COURT: Just based on what I am hearing you are talking about a contextual framework because I am not exhaustive as to these reasons. If there is other appropriateness, especially in view of the prior inconsistent statements being the substantive basis for the charge, *context* takes more—actually it may very well be moved to the fore in this case because of that issue under *Shillcut.* But certainly there is a *motive* involved here as to what is involved with the ongoing nature of the alleged allegations. Certainly there is an *opportunity* for doing these things. They are in the same household under the circumstances involved. His *intent* was to gain access by whatever means he felt was appropriate, and certainly to say well that is crazy but the ongoing nature of the allegations which certainly go to *absence of mistake or accident.*

(Emphasis added.) (R. 71:39–40); *see also* Pet'r App. at 129–30. We note that the trial court record refers to *Shillcutt* as *Shillcut. State v. Shillcutt,* 116 Wis. 2d 227, 341 N.W.2d 716 (Ct. App. 1983), *aff'd on other grounds,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984).

dent source as to the victims' credibility, as well as their state of mind, in light of their recantations of prior charges against Hunt.

¶ 5. In addition to holding that there were permissible purposes, we hold that the other-acts evidence was relevant and probative. Moreover, we hold that the circuit court's cautionary jury instructions on the other-acts evidence mitigated any potential danger of causing unfair prejudice, confusion, misleading the jury, or undue delay.

¶ 6. Here, where permissible purposes existed for the admission of other-acts evidence, and where strong DNA evidence had been introduced, we hold that the court of appeals was not correct in reversing the convictions on all counts. The conviction on the charge of first-degree sexual assault causing pregnancy should have been upheld, even if there were not permissible purposes for the admission of other-acts evidence.

¶ 7. Finally, we hold that the circuit court properly applied the greater latitude rule in allowing other-acts evidence in this case where there were charges of sex crimes, especially since child victims were involved.

## I. FACTS

¶ 8. The facts of this case are undisputed. John Patrick Hunt (Hunt) lived with his wife, Ruth,[5] and their six children. In 1988 Angelica J. and her three children, 15–year-old Tiffany and two other daughters, Lana and April, moved in with Hunt in a marital-type relationship. Angelica and her children resided with Hunt, Ruth, and the other children, in what was a

---

[5] The record reflects that Ruth Hunt is also referred to as "Ruthie" Hunt.

11

functionally bigamist household. After Angelica arrived Hunt had another child with Ruth and three more with Angelica.

¶ 9. In 1998 Tiffany J. (Angelica's daughter from a previous relationship and 15 years old at the time) gave birth to a son, Isaiah. The DNA testing subsequently established that Hunt was the father of Tiffany's child. At the time of this dispute, the Hunt household had 13 people living in it: Hunt; his two "wives," Ruth and Angelica; and ten minor children.

¶ 10. On September 21, 1999, Ruth and Angelica took the children to the police station and reported that Hunt had threatened them and others in the household. Ruth informed Milwaukee police officers that she was afraid to return home, and that her husband had threatened their lives.

¶ 11. Based on the information provided in the police report the police officers accompanied them back to their home. Ruth and the others waited in the car about a half-block away, while the officers went to the premises. At the home the officers arrested Hunt and allowed the others back inside.

¶ 12. After the arrest of Hunt police officers interviewed members of the family. Officers learned that Hunt frequently smoked crack cocaine and would force the entire family into the upstairs portion of the home, which was without running water, for the duration of his drug use. It was also revealed, through these interviews, that Hunt would force either Tiffany or Angelica J. to have sexual intercourse with him while he was smoking crack cocaine.

¶ 13. Hunt was charged by the Milwaukee County District Attorney, E. Michael McCann, with six criminal counts, including two counts of first-degree sexual assault of a child, one count of repeated sexual assault

of the same child, one count of first-degree sexual assault resulting in the pregnancy of a child, one count of exposing a child to harmful materials, and one count of second-degree sexual assault by use of force.

¶ 14. After the charges were filed the victims and witnesses recanted their statements to police officers and refused further cooperation with the prosecution.

¶ 15. On February 28, 2000, as a result of the women's refusal to cooperate, the prosecutor filed a pre-trial motion in limine seeking, *inter alia,* the introduction of other-acts evidence that Hunt had physically and sexually abused Ruth, Tiffany, and Angelica. Under Wis. Stat. § 904.04(2) (1997–98) evidence of other crimes, wrongs, or acts is not admissible to prove character of a person to show that he acted in conformity therewith, but may be permitted for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[6] In support of its motion, the prosecution

---

[6] The State sought to introduce the following other-acts evidence concerning the defendant:

1. That the defendant's wife, Ruthie Hunt, had been the victim of both physical and sexual abuse at the hands of her husband. This included the time period involved in the sexual abuse to the child Tiffany J.

2. That Jennifer M., another stepdaughter of the defendant, was sexually abused by the defendant when she was approximately the same age as Tiffany J. That sexual abuse was reported to the police in 1995. It consisted of defendant asking Jennifer to hug and kiss him, telling her she could feel his erect penis. He would also kiss her on the neck and fondle her breasts on top of her clothing. This occurred during the time period that Jennifer lived in the same residence as John P. Hunt, and was related to him as a stepdaughter.

3. That John P. Hunt molested his daughter Cleopatrick M., at a time when she was approximately the same age as the victim

argued that the other-acts evidence was admissible under Wis. Stat. § 904.04(2) as relevant and probative of the context in which these sexual offenses occurred, and was part of the corpus of the crimes with which Hunt had been charged. The prosecution asserted that the other-acts evidence related directly to the victims' state of mind, and their past acts of recanting prior charges against Hunt.

¶ 16. With respect to the other-acts evidence of Hunt's drug use, the prosecution argued that those allegations (*e.g.,* that he constantly smoked crack) provided the necessary background for understanding Hunt's behavior and provided an independent source of information about the credibility of the victims' stories.

Tiffany J. The defendant was also in the position of stepfather and was residing in the same residence with her. He fondled her bare breasts and vagina, and also exposed his penis to her, asking if she would like to have sex with him. This was also reported to the police.

4. That the defendant was physically abusive to the victim, Tiffany J., as well as to the victim, Angelica J. All of the reports had either been submitted to the defense in this matter, or were being provided along with the motion.

5. That under Section 904.04(2), with regard to the prior acts of sexual conduct with his stepdaughters, that these acts were relevant and probative of the issues of the defendant's *intent* and *motive.* With respect to the issues relating to the physical abuse of the parties mentioned above, it was the State's position that these acts were *relevant to the "context"* in which the sexual assaults occurred, and also part of the *corpus of the crimes* with which the defendant was charged. They also related directly to the *victims' state of mind. State v. C.V.C.,* 153 Wis. 2d 145, 450 N.W.2d 463 (Ct. App. 1989).

(Emphasis added.) (R. 16:3–4); *see also* Pet'r App. at 116–17 (state's motion in limine); *see also* R. 33:1 (state's supplemental motions in limine asking the court to consider Hunt's prior drug use).

14

Moreover, the prosecution argued that the other-acts drug evidence was highly relevant in light of the victims' current recantations.

¶ 17. Defense counsel, Thomas M. Bartell,[7] filed a brief in opposition to the motion in limine, and the prosecutor later filed a supplemental motion to admit evidence that Hunt had previously used drugs. The supplemental motion listed three reasons for the inclusion of the other-acts evidence: (1) as part of the corpus of the crimes; (2) context and necessary background information; and (3) for corroboration of the information previously given to police, since the witnesses were recanting their stories.

¶ 18. The circuit court held a pre-trial motion hearing, where the prosecutor repeated the arguments for the other-acts evidence, and also pointed out that the evidence would help the jury understand the recantations by the witnesses, as well as the circumstances of the case. In addition, the prosecutor argued that the evidence showed an absence of mistake on Hunt's part and that the evidence showed opportunity and motive. Over defense objections Judge Dennis P. Moroney granted the State's motion in limine and allowed the State to introduce some of the other-acts evidence it requested.[8]

---

[7] The record indicates that Hunt was dissatisfied with his counsel. Thomas M. Bartell, his first attorney, eventually withdrew as counsel. David K. Ziemer was then retained as counsel but later withdrew. The record also indicates that Attorney Brendan Rowen had been assigned as counsel to Hunt's case but decided to leave the legal profession.

[8] As noted by Hunt in his brief at pages 37–39, at least fifteen other acts were introduced in this case:

1. Hunt had been reported to police for using drugs.

¶ 19. In its analysis, the circuit court specifically referred to the *Sullivan* test for admitting the evidence of other-acts. *State v. Sullivan,* 216 Wis. 2d 768, 576 N.W.2d 30 (1998). The circuit court judge said:

> The Court would find that the threshold requirements of a 904.04 other acts evidence have been satisfied in this case. I think there is not much question about that just based upon what I have heard, and also what I have read in the case and also the certain

2. Ruth had sought a restraining order against Hunt on three separate occasions, alleging on one occasion that Hunt said his friends could kill her.

3. Ruth had alleged Hunt had pushed her around and hit her with a big knife.

4. Hunt threatened to mess Ruth up so much that nobody would recognize her.

5. Hunt had "busted [Ruth's] head."

6. Hunt "busted [Ruth's] mouth open causing her to need 22 stitches back in the early 1970s when they were teenagers."

7. Hunt had slapped, kicked and put a knife to Ruth.

8. Hunt struck Ruth in the face causing a cut to the inside of her cheek.

9. Hunt threatened to kill Ruth with a gun and a gun was found in Hunt's bedroom.

10. Hunt hit Ruth in the chest with a closed fist.

11. Hunt had punched a pregnant Angelica three or four times to her ribs, bruising her ribs.

12. Hunt had done physical, bad, painful and harmful things to Ruth, Angelica, and Tiffany in the past.

13. Hunt stole money from Angelica's purse.

14. On another occasion, Hunt was arrested by the police for physically abusing Angelica.

15. Hunt had been seen choking Ruth.

amount of information that has been provided but then certainly—certainly denied at various times, and it goes to the credibility of the people, I grant you, but it—but it also goes to whether or not contextually in this case here to show whether or not he acted in conformity therewith under the—you know, under the rules of the other acts evidence.

So therefore I think that there is relevancy under the three-prong test of *Sullivan.* There is no—certainly the appropriate reasons under the 904.04. There certainly is a relevancy connected with this which would give some corroborative effect to the initial statements, at least of the witnesses, and certainly then you have got to take a look and, yes, it is prejudicial to the extent that any evidence that could be received in the case against Mr. Hunt would be prejudicial. I mean that goes without saying. Anything contrary or anything against him is prejudicial, but whether or not the relevancy under the appropriateness of the other acts evidence, particularly in a sexual assault case which historically is more of a one-on-one situation, the rule is that, and especially in view of the issues affecting Ruthie Hunt and may very well be involved though the same things enter into as far as Tiffany is concerned.

(R. 71:38–39); *see also* Pet'r App. at 129–30.

¶ 20. In addition to allowing the evidence, the circuit court judge reasoned that the application of the greater latitude rule was appropriate because the case involved a sexual assault of a child.[9]

¶ 21. In light of the circuit court's ruling the prosecution introduced evidence that: (1) Hunt had

_____

[9] THE COURT: Well, and they [other acts evidence] are even more so [prejudicial] that the Court is supposed to allow more leniency and more latitude when it involves particularly sexual assaults of children, and that is what we have in this case at least at the time. And certainly with the prior inconsistent

17

been reported to the police for using drugs; (2) Ruth

statements being the basis of the substantive proof in this case, the Court does feel that it is appropriate and I will allow 10–1 in, Number 2, 10–2.

MR. ZIEMER: Actually, your Honor, I think although there is more latitude with sexual abuse of children, I think that what is generally meant there is that you can bring in other instances of child sexual.

THE COURT: Not every act here of child sexual abuse was charged in this case, obviously.

MR. ZIEMER: Well what exactly as far as is it motive or to show motive or to show mistake of?

THE COURT: Just based on what I am hearing you are talking about a contextual framework because I am not exhaustive as to these reasons. If there is other appropriateness, especially in view of the prior inconsistent statements being the substantive basis for the charge, context takes more—actually it may very well be moved to the fore in this case because of that issue under *Shillcut.* But certainly there is a motive involved here as to what is involved with the ongoing nature of the alleged allegations. Certainly there is an opportunity for doing these things. They are in the same household under the circumstances involved. His intent was to gain access by whatever means he felt was appropriate, and certainly to say well that is crazy but the ongoing nature of the allegations which certainly go to the absence of mistake or accident.

So for those four reasons the Court feels that the other acts evidence that were specifically identified plus the contextual aspect will be allowed in this case. And it is particularly true not only as to Ruthie Hunt, even though she was an uncharged victim in this case, alleged victim, but it is particularly true when it comes to Tiffany, because she was a minor, which gives the Court even further latitude under the circumstances and requirements of law, which allows for the Court to have greater latitude when allowing in other acts evidence, especially when there is alleged actions of child molestation involved.

I am doing that.

(R. 71: 39–41); *see also* Pet'r App. at 130–32.

18

had sought restraining orders against him on three prior occasions; (3) Hunt had verbally threatened Ruth and others in the household; and (4) Hunt had physically abused Angelica and Ruth in the past. The jury also heard evidence concerning DNA testing, which established Hunt's paternity of 15–year-old Tiffany's child. The DNA test established the likelihood of Hunt's paternity of the child at 99.989 percent.

¶ 22. At the conclusion of the trial the circuit court judge instructed the jury, using the standard jury instruction, Wis JI—Criminal 275, that it could only use the evidence of Hunt's prior bad acts for specific permissible purposes, such as Hunt's opportunity, intent, the absence of mistake or accident, motive, and preparation or plan. No mention was made of context in the instruction given. The circuit court also warned the jury that it could not make any conclusions of Hunt's character or propensity to commit the crime charged based on the other-acts evidence.[10] No objection was

---

[10] Jury Instructions:

Evidence has been received regarding other incidents involving the defendant for which the defendant is not on trial.

Specifically, evidence has been received that the Defendant made threats of death or physical harm to each of the Hunt/J. family as same resided at 2433 North 22nd Street, City and County of Milwaukee, Wisconsin, on September 21st, 1999.

Further, there have been other acts of reported physical abuse on the part of the Defendant regarding Ruthie Hunt and/or Angelica J. reported to the police and/or District Attorney's Office which were subsequently not prosecuted due to the said alleged victims not following through with the prosecution.

Further, there have been other acts of alleged sexual abuse of Jennifer M. and/or Cleopatrick M. on the part of the Defendant. The same were reported to the police and/or District Attorney's Office which were subsequently not prosecuted due to the said

made by the defense, and the jury found Hunt guilty on all six counts. Hunt received a sentence totaling 122 years in prison on four counts, and he was placed on probation on the two remaining counts.

¶ 23. Hunt appealed arguing, *inter alia,* that the circuit court erred when it allowed the prosecution to introduce evidence that Hunt had engaged in prior bad acts, including illegal drug use and the physical and sexual abuse of Ruth.

alleged victims not following through with the prosecution, or the prosecution not being pursued by the State.

If you find that this conduct did occur, you should consider it only on the issues of motive, opportunity, intent, preparation or plan, or absence of mistake or accident.

*You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offenses charged in this case.* The evidence was received on the issues of:

Motive; that is, whether the defendant has a reason to desire the result of the crime.

Opportunity; that is, whether the defendant had the opportunity to commit the offense charged.

Intent; that is, whether the defendant acted with the state of mind that is required for the offense.

Preparation or plan; that is, whether such other conduct of the defendant was part of a design or schedule that led to the commission of the offense charged.

Absence of mistake or accident; that is, whether the defendant acted within the state of mind required for this offense.

*You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for* that reason is guilty of the offense or offenses charged.

(Emphasis added.) Pet'r App. at 141–43.

20

¶ 24. The court of appeals concluded that the circuit court erred in admitting the other-acts evidence and that the error was not harmless. As a result the court of appeals reversed Hunt's judgment of conviction and remanded the entire matter to the circuit court for a new trial.

¶ 25. In reaching its decision the court of appeals reasoned that the circuit court had committed two errors. First, when addressing the "context" rationale for admitting the other-acts evidence in the pre-trial ruling, the circuit court stated that the evidence "also goes to show whether or not he acted in conformity therewith." The court of appeals found that clearly was an erroneous basis for admitting other-acts evidence, as the State had conceded. The court of appeals, however, did not discuss the permissible bases on which the circuit court held the other-acts evidence admissible; instead, the appellate court concluded that the judge's "propensity rationale" required reversal of all of Hunt's convictions. Contrary to the cautionary jury instructions given by the circuit court, the court of appeals nevertheless opined:

> Although the circuit court could have mitigated the unfairly prejudicial effect of the evidence by giving a cautionary instruction to the jury about the purposes for which the evidence was admitted and the proper use of that evidence in their deliberations it gave no such instruction ... While it is doubtful that, given the nature of the other acts evidence allowed, a cautionary instruction could have reduced the prejudice to Hunt to such a degree that the evidentiary ruling could have been upheld, the circuit court's failure to give such an instruction further solidifies our conclusion that admission of the evidence was erroneous and unfairly prejudiced Hunt's defense.

21

*State v. Hunt,* No. 01–0272–CR, unpublished order at 6 (Wis. Ct. App. Jul. 17, 2002).

¶ 26. Second, the court of appeals reasoned that the circuit court had erroneously applied the greater latitude rule for admitting other-acts evidence in a case involving the sexual assault of a child. According to the court of appeals the greater latitude test did not apply because the other acts that were identified to the jury were not sufficiently similar to the sexual assault crimes with which Hunt was charged in this case. In reaching its decision, the court of appeals said:

> We are satisfied that the prejudicial effect of the admitted evidence substantially and unfairly outweighed its probative value, primarily because the other acts evidence involved behavior significantly different than that for which Hunt was being tried.

*Id.*

¶ 27. The State petitioned this court for review, which we granted on November 12, 2002.

## II. WISCONSIN STATUTE § 904.04(2) AND OTHER-ACTS EVIDENCE LAW

¶ 28. Before engaging in an analysis of the issues presented it is necessary to understand the historical background of Wisconsin's other-acts evidence law.

¶ 29. Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Wis. Stat. § 904.04(2). However, Wis. Stat. § 904.04(2) allows other-acts evidence to be admitted "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

22

knowledge, identity, or absence of mistake or accident." As we noted in *State v. Hammer:*

> . . . not all of the exceptions under Wis. Stat. § (Rule) 904.04(2) must be met. "The exceptions listed in the statute [§ (Rule) 904.04(2)] are not mutually exclusive. The exceptions slide into each other; they are impossible to state with categorical precision and the same evidence may fall into more than one exception." *State v. Tarrell,* 74 Wis. 2d 647, 662, 247 N.W.2d 696 (1976) (Abrahamson, J., dissenting). What is required is "one" acceptable purpose. *State v. Sullivan,* 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998); *State v. Alsteen,* 108 Wis. 2d 723, 729, 324 N.W.2d 426 (1982).

*State v. Hammer,* 2000 WI 92, ¶ 29, 236 Wis. 2d 686, 613 N.W.2d 629.

¶ 30. In *Whitty v. State,* 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967), this court noted the danger in admitting prior acts evidence. The court set forth reasons for limiting the use of such evidence: (1) The overwhelming tendency to presume the defendant is guilty because he is a person likely to commit such acts; (2) the tendency to condemn not because of the defendant's actual guilt, but because he may have escaped punishment for previous acts; (3) the injustice in attacking a person who is not prepared to show that the evidence used for attack is fabricated; and (4) the confusion of issues that may result in the introduction of other crimes.

¶ 31. This court reaffirmed the cautionary rationale behind admitting other-acts evidence expressed in *Whitty* in our decision in *Sullivan.* In *Sullivan* the defendant was convicted of battery and disorderly conduct, apparently in part due to evidence introduced at trial of a prior act of domestic disturbance. The defendant's ex-wife and neighbor testified about the

prior act of domestic disturbance. The defendant appealed and the court of appeals affirmed. On review this court held that the other-acts evidence was offered for a permissible purpose but was not probative of defendant's intent or absence of accident. In reaching our decision, we set forth a three-part analytical test for determining when other-acts evidence can be admitted.

██

¶ 32. The *Sullivan* test provided circuit courts with an analytical framework for deciding the admissibility of other-acts evidence. The three-part test asks the court to consider: (1) Whether the evidence is offered for a permissible purpose; (2) whether the evidence is relevant; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the jury or needless delay.[11] *Sullivan,* 216 Wis. 2d at 772.

### III. ISSUES

¶ 33. As noted previously, this court is presented with the following issues: (1) Does a circuit court commit reversible error if it fails to provide a detailed *Sullivan* analysis for admitting other-acts evidence? (2) Is an appellate court required to perform an indepen-

---

[11] This three-part test has sometimes been worded differently, apparently combining the second and third step into one step. *See State v. Pharr,* 115 Wis. 2d 334, 340 N.W.2d 498 (1993) (holding that trial courts must apply a two-prong test in determining whether evidence of other crimes is admissible. The first prong requires the trial court to determine whether evidence fits within one of the exceptions set forth in Wis. Stat. § 904.04, and the second prong requires the trial court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant).

dent review of the record for permissible bases for admitting other-acts evidence under *Sullivan* if the circuit court fails to adequately provide a *Sullivan* analysis or states an impermissible basis? (3) Is an appellate court required to reverse a defendant's convictions on all counts if the circuit court states an improper basis for the admission of other-acts evidence? (4) Is the court afforded greater latitude when applying the *Sullivan* analysis in cases dealing with sex crimes especially where a child victim is involved?

## IV. STANDARD OF REVIEW

¶ 34. The applicable standard for reviewing a circuit court's admission of other-acts evidence is whether the court exercised appropriate discretion. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–415, 320 N.W.2d 175 (1982) (citing *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971)). A circuit court's failure to delineate the factors that influenced its decision constitutes an erroneous exercise of discretion. *See McCleary,* 49 Wis. 2d at 282. When a circuit court fails to set forth its reasoning, it has been held that an appellate court independently should review the record to determine whether it provides an appropriate basis for the circuit court's decision. *See Pharr,* 115 Wis. 2d at 343.

## V. APPLICATION OF THE *SULLIVAN* TEST

¶ 35. The State asks this court to reverse the decision of the court of appeals. The State argues that by failing to conduct an independent review of the record, as required by *Sullivan,* the court of appeals erroneously reversed the circuit court's admission of other-acts evidence and, therefore, erroneously reversed Hunt's convictions. The State maintains that the court of appeals' decision reflects an unanticipated interpretation of the *Sullivan* test and such an interpretation implies that per se reversible error occurs when a circuit court does not adequately explain its reasons for admitting other-acts evidence. The State argues that the aforementioned interpretation of *Sullivan* is problematic because it relieves the appellate court of any obligation independently to review the record to sustain the circuit court's decision. In support of its position the State maintains that independent review has previously been recognized in many cases, and that, therefore, the appellate court ignored well-established case law.

¶ 36. Next, the State contends that had the court of appeals engaged in an independent review of the record, it would have discovered that in addition to the alleged improper "propensity" rationale expressed by the circuit court, the circuit court based the admission of the other-acts evidence on five additional permissible bases. The State argues that instead of analyzing the circuit court's proper reasons for admitting the other-acts evidence (i.e., motive, opportunity, intent, absence of mistake or accident, and context) the court of appeals simply relied on the one concededly erroneous "propensity rationale" expressed by the circuit court.

¶ 37. Moreover, the State asserts that the court of appeals' improper and inadequate analysis is reflected

in the court's erroneous statement that the circuit court never instructed the jury that the other-acts evidence could not be used as propensity evidence. The State points out that a cautionary instruction was given to the jury, twice.

¶ 38. Hunt disagrees and argues that the court of appeals was correct in its summary reversal of all counts. Hunt maintains that *Sullivan* requires all parts of the three-prong test to be satisfied. Because the court of appeals determined the probative value of the other-acts evidence was substantially outweighed by the potential prejudicial effect, the evidence should have been excluded. Hunt asserts that the court of appeals was not suggesting that no cautionary instruction was given, but rather that a *proper* instruction was not given.[12] Hunt argues that a proper instruction should have included a definition of "context" by which the court allowed the other-acts evidence to be admitted.

¶ 39. Moreover, Hunt maintains that while the State gave an extensive list of permissible purposes for the other-acts evidence, it was really introduced for propensity purposes. Hunt argues that the great number of other-acts admitted at trial prejudiced the jury and led to confusion of the jury.

---

[12] As noted in the statement of facts, Hunt failed to object to the jury instructions at trial. Failure to object to the jury instructions waives the issue. *State v. Perkins,* 2001 WI 46, 243 Wis.2d 141, 626 N.W.2d 762 (holding that failure to object at conference about jury instructions constitutes a waiver of any error in the proposed instructions or verdict); *State v. Johnston,* 184 Wis. 2d 794, 823, 518 N.W.2d 759 (1994)(citing *State v. Zelenka,* 130 Wis. 2d 34, 43–44, 387 N.W.2d 55 (1986). Even though this matter could be resolved on the issue of waiver, we feel that it is necessary to discuss the matter thoroughly.

¶ 40. Next, Hunt claims that the court of appeals had no obligation independently to review the record when the circuit court failed to provide a detailed *Sullivan* analysis and admitted other-acts evidence for an impermissible purpose. Moreover, Hunt argues that the court of appeals was not required independently to review the record given the sheer size of the record. Hunt maintains that independent review of each prior act admitted into evidence would be impractical. Hunt also argues that independent review would have led the court of appeals to the same conclusion because the alleged prior bad acts were not admitted for a permissible purpose, were not relevant, and did not accurately explain the recantation of witnesses.

¶ 41. Hunt argues that an appellate court is *required* to reverse a judgment of conviction if the circuit court erroneously admits evidence for propensity purposes. Hunt maintains that reversal is required when prior acts are improperly admitted into evidence without conducting a proper *Sullivan* analysis for each prior act, and without giving the jury a proper instruction based upon this analysis. Moreover, Hunt argues that because the cautionary instruction was too broad and most likely ineffective, the jury likely used the other-acts evidence for the impermissible purpose of propensity.

## VI. ANALYSIS

¶ 42. Upon review of evidentiary issues, "[t]he question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts

of the record." *Pharr,* 115 Wis. 2d at 342 (citations omitted). This court will not find an abuse (now an erroneous exercise) of discretion, if there is a reasonable basis for the circuit court's determination. *Id.* (citing *Boodry v. Byrne,* 22 Wis. 2d 585, 589, 126 N.W.2d 503 (1964)). However, in order for a discretionary decision to be upheld, "there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *Id.* (citing *State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733 (1968)).

A. Automatic Reversal/Duty To Review The Records

¶ 43. The State maintains that the court of appeals erred in interpreting *Sullivan.* We agree. *Sullivan* does not state, as the decision of the court of appeals suggests, that in situations where the circuit court fails to set forth a detailed analysis for admitting or excluding other-acts evidence, the reviewing court should summarily reverse all counts. Here the circuit court did explain its reasons for the admission of other-acts evidence, but it could have provided a more detailed *Sullivan* analysis for the decisions made.

¶ 44. Rather, *Sullivan* requires that the circuit court "articulate its reasoning for admitting or excluding the evidence, applying the facts of the case to the analytical framework." *Sullivan,* 216 Wis. 2d at 774. A circuit court's failure to delineate, with sufficient detail, the factors that influenced its decision in admitting other-acts evidence would seem to be contrary to the requirements we set forth in Sullivan. That case declared that ordinarily the appropriate recourse for the court of appeals should be to review the record inde-

29

pendently, to determine the existence of a reasonable basis for the circuit court's discretionary decision.[13] As noted in *Sullivan:*

> A circuit court's failure to delineate factors that influenced its decision constitutes an erroneous exercise of discretion. When a circuit court fails to set forth its reasoning, appellate courts independently review the record to determine whether it provides a basis for the circuit court's exercise of discretion.

*Id.* at 781 (citations omitted).

¶ 45. The independent review doctrine set forth in *Sullivan* is well-settled law in Wisconsin. *See Hammen v. State,* 87 Wis. 2d 791, 800, 275 N.W.2d 709 (1979) (holding this court will uphold a discretionary decision of the trial court, if the record contains facts which would support the trial court's decision had it fully exercised its discretion); *State v. Alsteen,* 108 Wis. 2d 723, 728, 324 N.W.2d 426 (1982); and *Pharr,* 115 Wis. 2d at 343.[14]

---

[13] *See McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). In *McCleary,* we said that we would not set aside a sentence where the trial judge failed to give the reasons for a lengthy sentence, but rather, we recognized the obligation "to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *See also State v. Pharr,* 115 Wis. 2d at 343 (holding that, where the trial court fails to set forth its reasoning in exercising its discretion to admit evidence, the appellate court should independently review the record to determine whether it provides a basis for the trial court's exercise of discretion).

[14] Recently, this court has upheld and emphasized the independent review doctrine. *State v. Davidson,* 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, and *State v. Hammer,* 2000 WI 92, 236 Wis. 2d 686, 613 N.W.2d 629. In discussing the independent review doctrine, we want to emphasize its applicability in

30

¶ 46. Upon review of this case it is clear that the court of appeals ignored the independent review doctrine and its duty independently to review the record in this case. The court of appeals failed even to mention such duty. Instead, the court of appeals stated that its standard of review of evidentiary decisions was the "erroneous exercise of discretion" standard. Although the court of appeals cited portions of *Sullivan,* it failed to cite *Sullivan's* independent review rule. *State v. Hunt,* No. 01–0272–CR, unpublished order at 6 (Wis. Ct. App. Jul. 17, 2002) (citing *State v. Chambers,* 173 Wis. 2d 237, 255, 496 N.W.2d 191 (1992), and *Sullivan,* 216 Wis. 2d at 780–81).

¶ 47. Hunt now attempts to argue that the court of appeals did not opine that no cautionary instruction was given, but rather, indicated that a *proper* instruction should have included a definition of context.

¶ 48. The court of appeals stated: "Although the circuit court could have mitigated the unfairly prejudicial effect of the evidence by giving a cautionary instruction to the jury about the purposes for which the evidence was admitted and the proper use of that evidence in their deliberations, it gave no such instruction." *Hunt,* unpublished order at 6 (citations omitted). The court of appeals' statement clearly conflicts with the record. The circuit court properly instructed the jury regarding the proper purposes for which it should consider the evidence. Moreover, the circuit court properly instructed the jury on two separate occasions that

---

other-acts evidence cases. We recognize that there are cases where independent review may be too onerous for the appellate court to undertake, or may be inappropriate under the circumstances presented.

31

it could not consider the evidence for improper purposes, such as propensity, or to conclude that Hunt was a bad man.

¶ 49. In addition to ignoring the cautionary instruction given by the circuit court, had the court of appeals conducted an independent review of the record it would have discovered at least five permissible bases pursuant to Wis. Stat. § 904.04(2) to admit the other-acts evidence.

¶ 50. In failing to review the record independently the court of appeals essentially rewrote the independent review doctrine, set forth in *Sullivan,* to require summary dismissal if the circuit court does not give what the court of appeals considers to be a clear explanation. We hold that such an interpretation of *Sullivan* is in error.

B. Admissibility Of Other-Acts Evidence

¶ 51. After our own independent review of the record we hold that the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence. We hold that the circuit court had a reasonable basis for finding threshold requirements of a 904.04 other-acts evidence had been satisfied in this case, and admitting the other-acts evidence.

¶ 52. When reviewing a circuit court's determination for erroneous exercise of discretion an appellate court may consider acceptable purposes for the admission of evidence other than those contemplated by the circuit court, and may affirm the circuit court's decision for reasons not stated by the circuit court. *See Sullivan,* 216 Wis. 2d at 784–85. "Regardless of the extent of the trial court's reasoning, we will uphold a discretionary

decision if there are facts in the record which would support the trial court's decision had it fully exercised its discretion." *State v. Shillcutt,* 116 Wis. 2d 227, 238, 341 N.W.2d 716 (Ct. App. 1983), *aff'd on other grounds,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984).

■

¶ 53. As noted previously it is the party seeking to use other-acts evidence that bears the burden of establishing the relevance of other-acts evidence. *Sullivan,* 216 Wis. 2d at 774. However, it is the opponent of the admission of the evidence who must show that the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* at 773; *State v. Speer,* 176 Wis. 2d 1101, 1114, 501 N.W.2d 429 (1993).[15]

C. First Prong—Evidence Offered For A Permissible Purpose

■

¶ 54. We conclude under the first prong of *Sullivan,* that the other-acts evidence was properly admitted under Wis. Stat. § 904.04(2) as an exception. As noted previously, Wis. Stat. § 904.04(2) is not exhaustive.

¶ 55. The State's pre-trial motion in limine sought to introduce the other-acts evidence on the grounds that such evidence was admissible under Wis. Stat. § 904.04(2) for purposes of establishing the "context" in which these sexual offenses occurred, and part of the corpus of the crimes with which Hunt had been charged. The prosecution also asserted, both in its motion in limine and pre-trial argument to the circuit court, that the other-acts evidence related directly to

---

[15] It is important to note that though it did not have the burden to do so, the State offered reasons why the other-acts evidence was not unduly prejudicial.

the victims' state of mind and their past acts of recanting prior charges against Hunt.

¶ 56. With respect to the other-acts evidence of Hunt's drug use, the prosecution argued that those allegations (*e.g.*, that he constantly smoked crack), provided the necessary background for understanding Hunt's behavior and provided an independent source of information about the credibility of the victims' stories. Moreover, the prosecution argued that the other-acts evidence was highly relevant in light of the victims' current recantation.

¶ 57. The circuit court agreed with the prosecution. Explicitly referring to the *Sullivan* test, the circuit court recognized permissible purposes under Wis. Stat. § 904.04(2) to admit the other-acts evidence. Those purposes included: (1) showing the context in which events (including the recantations) occurred in the case; (2) opportunity; (3) intent; (4) absence of mistake or accident; and (5) motive. Although the circuit court recognized the permissible purposes in admitting the other-acts evidence, the circuit court nevertheless stated:

> . . . I think there is not much question about that just based upon what I have heard, and also what I have read in the case and also the certain amount of information that has been provided but then certainly— certainly denied at various times, and it goes to the credibility of the people, I grant you, but it—but it also goes to whether or not contextually in this case here to show whether or not he acted in conformity therewith under the—you know, under the rules of the other acts evidence.

(R. 71:38) As stated earlier, we recognize that the circuit court's reference to conformity was in error.

However, we note that the statement was made during a pre-trial hearing, and was not made in the presence of the jury.

¶ 58. First, the circuit court could reasonably have concluded, as it did, that the other-acts evidence was admissible for the purpose of establishing context. Other-acts evidence is permissible to show the context of the crime and to provide a complete explanation of the case. *Pharr*, 115 Wis. 2d at 348–49; *Shillcutt*, 116 Wis. 2d at 236. The context of other-acts evidence in this case provided insight as to the unique circumstances in the Hunt household. The other-acts evidence provided an understanding of the abuse that took place in the home, and the authority and control Hunt possessed over Ruth, Angelica, and the children living with them. Moreover, the other-acts evidence of abuse toward Ruth, and drug use, provided a context in which the jury could understand the victims' and witnesses' fear of the defendant and their pattern of recantations.

¶ 59. The other-acts evidence was permissible to show the victims' state of mind, to corroborate information provided to the police, and to establish the credibility of victims and witnesses in light of their recantations. Such purposes have been held to be permissible purposes in Wisconsin. *See State v. C.V.C.*, 153 Wis. 2d 145, 450 N.W.2d 463 (Ct. App. 1989) (holding that the other-acts evidence that husband had been charged with false imprisonment and sexual assault of his wife and had threatened his wife's life some two years earlier was properly admitted for limited purpose of showing the wife's state of mind on issue of whether she consented to acts of sexual intercourse); *Kluck v. State,* 223 Wis. 381, 389, 269 N.W. 683 (1936) (holding that, where other criminal acts are so connected with the offense

35

charged that their commission directly tends to prove some element of the latter, such as guilty knowledge, or some specific intent, evidence of such other acts is admissible to explain or to corroborate the evidence showing the act charged); *State v. Schaller,* 199 Wis. 2d 23, 43, 544 N.W.2d 247 (Ct. App. 1995) (holding that evidence of the defendant's abuse of his child in a public park as testified to by third-party witnesses was admissible to illustrate extent to which his wife would go to extricate her husband, the defendant, from potential criminal prosecution and to assist jury in evaluating whether the wife was being truthful when she later recanted sexual assault charges against husband). While only mentioned in the cautionary instructions given, preparation or plan was also a permissible purpose for admission of other-acts evidence.

¶ 60. Next, the circuit court could reasonably have concluded that the other-acts evidence was admissible for the purpose of establishing opportunity and motive. When a defendant's motive for an alleged sexual assault is an element of the charged crime, we have held that other crimes evidence may be offered for the purpose of establishing opportunity and motive. *State v. Davidson,* 2000 WI 91, ¶ 57, 236 Wis. 2d 537, 613 N.W.2d 606 (citations omitted). As noted before, Hunt was charged with two counts of first-degree sexual assault of a child (Wis. Stat. § 948.02(1)), one count of repeated sexual assault of the same child (Wis. Stat. § 948.025(1)), one count of first-degree sexual assault resulting in the pregnancy of a child (Wis. Stat. § 940.225(1)(a)), one count of exposing a child to harmful materials (Wis. Stat. § 948.11(2)(a)), and one count of second-degree sexual assault by use of force (Wis. Stat. § 940.225(2)(a)). As such, five out of the six crimes

Hunt was charged with related to sexual assault. There is no doubt that sexual assault, involving either sexual contact or sexual intercourse, requires an intentional or volitional act by the perpetrator. *See State v. Olson,* 2000 WI App 158, ¶ 6–12, 238 Wis. 2d 74, 616 N.W.2d 144. As an example, under Wis. Stat. § 948.01(5)(a), sexual contact is defined as:

> Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complaintant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complaintant or sexually arousing or gratifying the defendant.

The other-acts evidence was properly admitted to prove motive because purpose is an element of sexual assault, and motive and opportunity are relevant to purpose. *State v. Plymesser,* 172 Wis. 2d 583, 593–96, 493 N.W.2d 367 (1992). Thus, Hunt's motive or opportunity for allegedly touching or having intercourse with Tiffany J. was part of the corpus of the crimes charged, and evidence relevant to the motive or opportunity was therefore admissible. *Id.*

¶ 61. Similarly, according to the meaning of "sexual contact" under Wis. Stat. § 948.01(5)(a), the defendant had to intentionally touch the victims. The admission of the other-acts evidence was therefore relevant to show that the Hunt did not touch the victims by accident or mistake, but intended to do so.

D. Second Prong—Evidentiary Relevance

¶ 62. Under the second step of *Sullivan* we hold that the circuit court properly found the other-acts

evidence to be relevant for the purposes of showing context, opportunity, intent, absence of mistake or accident, and motive.

¶ 63. Wisconsin Stat. § 904.01 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

¶ 64. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *State v. Gray,* 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999). Similarity is demonstrated by showing the "nearness of time, place, and circumstance" between the other act and the alleged crime. *State v. Scheidell,* 227 Wis. 2d 285, 305, 595 N.W.2d 661 (1999). It is within a circuit court's discretion to determine whether other-acts evidence is too remote. *See Hough v. State,* 70 Wis. 2d 807, 235 N.W.2d 534 (1975). There is no precise point at which a prior act is considered too remote, and remoteness must be considered on a case-by-case basis. *State v. Friedrich,* 135 Wis. 2d 1, 25, 398 N.W.2d 763 (1987). Even when evidence may be considered too remote, the evidence is not necessarily rendered irrelevant if the remoteness is balanced by the similarity of the two incidents. *See State v. Mink,* 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988). For example, this court has, in other cases, upheld the admission of other-acts evidence, where the remoteness was over ten years. *Plymesser,* 172 Wis. 2d 583 at 596 (upholding the admissibility of 13–year-old evidence); *State v. Kuntz,* 160 Wis. 2d 722, 467 N.W.2d 531 (1991) (upholding the admissibility of 16–year-old evidence).

¶ 65. In the State's motion in limine, and in the State's oral argument to the circuit court, the State argued that the other-acts evidence involving the physical abuse of Ruth Hunt was relevant to show context, the defendant's state of mind, the victims' and witnesses' state of mind, absence of mistake or accident, as well as motive and opportunity.[16]

---

[16] In the motion hearing before the circuit court, the State argued that the above evidence was relevant:

> . . . for two reasons. First of all, she was one of a large number of people who showed up at the police station that opened the door to this investigation. Her information was confirmed by the statements that were made by Angelica and Tiffany relating to what was going on within that household. So they were all telling the same story, and they were all describing physical abuse to various parties including Miss Hunt by Mr. Hunt.
>
> . . . .
>
> So the physical evidence in this case corroborates the information that had been provided by Ruthie Hunt. Why this is relevant—it takes on a particular importance in light of the fact that everybody is recanting their stories now. . . .
>
> . . . .
>
> . . . I believe that this information is relevant, . . . . It is part of the corpus of the crime. It is the reasoning behind why these people reported to the police, and they did not report because Tiffany was being sexually abused. They reported because they were all in dire fear of their lives because of the threats to physical harm and to killing them that had been going on by Mr. Hunt. . . .
>
> . . . .
>
> . . . It is necessary to explain what was going on in this household, why the finding of the baseball bat and why the exodus of these 12 people out of the house in the night hours of September 21 even occurred. All of those things are relevant to this case, and I believe that the Court should allow its admissibility.

¶ 66. The circuit court judge agreed and stated: "There certainly is a relevancy connected with this which would give some corroborative effect to the initial statements, at least of the witnesses. . . . " (R. 71:38)

¶ 67. We agree with the reasons offered by the State and the decision of the circuit court and hold that the other-acts evidence admitted by the circuit court satisfied the second-prong of the *Sullivan* test.

E. Third Prong—Evidentiary Balancing Test

¶ 68. Finally, under the third step of *Sullivan,* we hold that the circuit court properly determined that the

---

THE COURT: What specific under 904.04(2), what specific, appropriate reasons do you believe the State would be using this for?

MS. FALK: Well other than the context which is not—the Court knows that under 904.04(2) that is illustrative and not exhaustive, and I will again state to the Court the *State v. Shillcut,* that proposition that is where it was very clearly set, and is 116 Wis. 2d—I think it is 325. It is a 1983 case from the Court of Appeals.

In addition, I believe that this also goes to the defendant's state of mind, and it goes to both of the victims, both of the victims and the witnesses' state of mind as well. It also goes to the absence of mistake or accident on the part of the defense, and this relates to what I have been explaining to the Court about it is just unlikely that this number of people could provide this level of detail relating to the same story and it all just be a conjecture.

THE COURT: Well you are saying—I mean it would almost have motive and opportunity as well being within the same household and within the same context of the behavior ostensibly with others in the household besides the named defendant.

MS. FALK: That is correct.

(R. 71:29–34)

probative value of the other-acts evidence was not outweighed by unfair prejudice.

¶ 69. Even if the evidence is found to be probative, we must address whether the probative value of the other-acts evidence is substantially outweighed by any of the concerns listed in Wis. Stat. § 904.03.[17] As such, in order to prevent admissibility, the probative value of the evidence must be substantially outweighed by danger of unfair prejudice and not be merely prejudicial. *See Gray*, 225 Wis. 2d at 64. Hunt bears the burden of showing that such probative value is outweighed.

¶ 70. In the pre-trial motion arguments, the State repeatedly argued that the other-acts evidence was not unfairly prejudicial, because the court could, and should give a cautionary instruction to the jury regarding the other-acts evidence.

¶ 71. In reaching its decision to admit the other-acts evidence, the circuit court, while recognizing the danger of prejudice inherent in the other-acts evidence, seems to have concluded that the evidence was not *unfairly* prejudicial. *See* Pet's App. at 129–30.

---

[17] Wisconsin Stat. § 904.03 provides:

Exclusion of relevant evidence on the grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶ 72. In determining whether a piece of evidence is unfairly prejudicial, we have held that cautionary instructions help to limit any unfair prejudice that might otherwise result. *Plymesser,* 172 Wis. 2d at 596–97.

¶ 73. Contrary to Hunt's argument and the court of appeals' decision, the circuit court offered proper cautionary instructions on the other-acts evidence. Accordingly, any unfair prejudicial effect caused by the admittance of the other-acts evidence was substantially mitigated by the circuit court's cautionary instructions to the jury.

¶ 74. As noted before, the circuit court's cautionary instructions to the jury specifically told the jurors that they should not conclude from the evidence that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character. After listing proper purposes for which the jury could consider the other-acts evidence, the circuit court specifically instructed the jury that it should not conclude from the other-acts evidence that the defendant was a "bad person."

¶ 75. The cautionary instructions given by the circuit court in this case are the type of cautionary instructions that we affirmed in *State v. Fishnick,* 127 Wis. 2d 247, 262, 378 N.W.2d 272 (1985), and *Gray,* 225 Wis. 2d at 65. In light of the mitigating effect of the circuit court's cautionary instructions, we hold that Hunt failed to meet his burden of showing that the probative value of the other-acts evidence was substantially outweighed by any alleged unfair prejudicial effect. Further, we affirm the circuit court's decision to admit the other-acts evidence because it satisfies all

three prongs of the three-part *Sullivan* test for admissibility of prior acts evidence.[18]

F. Harmless Error

¶ 76. Assuming *arguendo,* that the circuit court erroneously admitted other-acts evidence based upon an impermissible propensity/character basis, the fact remains that five other permissible bases existed for admitting the other-acts evidence. If there was error here, it was harmless.

¶ 77. The test for harmless error is "if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Harvey,* 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189; *see also* Wis. Stat. § 805.18(2).

¶ 78. The court of appeals based its summary reversal upon an erroneous interpretation of *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938). *Gross* states that if one argument out of many sufficiently supports a judgment, that one argument is sufficient to uphold a ruling, not overturn it. *Id.*

¶ 79. As noted before, unlike the court of appeals' belief, *Sullivan* states that if the circuit court errone-

---

[18] Despite the "kitchen sink" claim of the dissent, *see* dissent, ¶ 95, we are satisfied that it is not necessary, to meet the requirements of *Sullivan,* that we now evaluate in this opinion, each of the other-acts admitted, separately, in light of permissible purposes, relevancy, and probative value vis-à-vis unfair prejudice. We are satisfied, based on our review of the record before us, that the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence at issue here. We are satisfied that our review and analysis is sufficient under the circumstances presented.

ously admitted other-acts evidence based upon an impermissible purpose, there must be an independent determination whether it constituted reversible or harmless error. *See Sullivan,* 216 Wis. 2d at 792.

¶ 80. Upon this court's independent review, we believe that the circuit court judge set forth five permissible bases for admitting the other-acts evidence under Wis. Stat. § 904.04(2). Although the State concedes that the circuit court judge improperly made reference to propensity, that statement was never heard by, or revealed to, the jury.

¶ 81. As a result, we hold that the court of appeals erred by reversing the convictions on the grounds that the lower court had made reference to an impermissible basis (the propensity basis) even though the circuit court relied upon five other permissible bases consistent with Wis. Stat. § 904.04(2) (context, motive, opportunity, intent, and absence of mistake or accident). Had the court of appeals conducted an independent review of the record, in all likelihood it would have determined, as we do, that the record contained proper reasons for admitting the other-acts evidence.[19]

¶ 82. Moreover, it is noted that the court of appeals reversed the conviction on the charge of first-degree sexual assault causing pregnancy where the

---

[19] The failure of the circuit court to include "context" in the cautionary instruction is also subject to review under the harmless error test. Again, assuming error, it seems that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Harvey,* 254 Wis. 2d at 469, ¶ 51 (Crooks, J. concurring). We also note, as discussed previously, that this matter could be resolved on the basis of waiver, since there was no objection to the instructions. *See supra* note 11.

DNA evidence established the likelihood that the defendant was the father of the child at 99.989 percent. Even if the other-acts evidence was admitted improperly, it seems "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Harvey*, 254 Wis. 2d at 469, ¶ 51 (Crooks, J. concurring).

G. Application Of The Greater Latitude Test

¶ 83. The State maintains that by peremptorily dismissing the application of the greater latitude rule in this case, the court of appeals has revealed a fundamental misunderstanding of the rule. According to the State, the greater latitude rule, as applied in child sexual assault cases, does not depend on the similarity between the other-acts evidence offered and the charged conduct. Rather, the rule concerns the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in child sexual abuse cases. *Davidson*, 236 Wis. 2d 537, ¶ 42. According to the State, the degree of similarity and remoteness factors between the charged acts and other-acts evidence offered might influence the determination of the probative value of the other-acts evidence. However, neither a lack of similarity nor remoteness necessarily precludes the use of other-acts evidence under the appropriate application of the greater latitude rule. The State argues that a correct interpretation of the greater latitude rule requires discretion when assessing the relevance and probative value of the other-acts evidence.

¶ 84. Hunt maintains that the circuit court misapplied the greater latitude rule by concluding that this rule may be applied when the current crime charged

involves the sexual assault of a child, because, here, the defendant's acts were not substantially similar to the crimes charged. According to Hunt, the greater latitude rule should only apply when the prior act involves the sexual assault of a child. Moreover, Hunt argues that the State's interpretation of *Davidson* is incorrect; the greater latitude rule is to be used only to admit into evidence similar prior acts to the crime charged, not any prior bad act.

¶ 85. As noted previously, an appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts, applied a proper standard of law, and used a demonstrative rational process, and reached a conclusion that a reasonable judge could reach. *Loy,* 107 Wis. 2d at 414–415 (citing *McCleary,* 49 Wis. 2d 263 (1971)).

¶ 86. We have ruled that "Wisconsin courts permit a more liberal admission of other crimes evidence in sexual assault cases than in other cases." *Davidson,* 236 Wis. 2d 537, ¶ 44; *State v. Hammer,* 2000 WI 92, ¶ 23, 236 Wis. 2d 686, 613 N.W.2d 629. Accordingly, in a sex crime case, the admissibility of other-acts evidence must be viewed in light of the greater latitude test. As we noted in *Hammer:*

> The greater latitude rule·was first stated in 1893 in *Proper v. State,* 85 Wis. 615, 628–30, 55 N.W. 1035 (1893). . . . The rule helps other acts evidence come in under the exceptions stated in Wis. Stat. § (Rule) 904.04(2). *State v. Fishnick,* 127 Wis. 2d 247, 256, 378 N.W.2d 272 (1985).

*Id.*

██

¶ 87. In *Davidson,* a case mandated with *Hammer,* the defendant was convicted of second-degree sexual assault of his 13–year-old niece. At trial, under the greater latitude rule, the circuit court allowed evidence of a previous conviction for sexual assault to be introduced, with a cautionary instruction given to the jury. The defendant appealed, the court of appeals reversed, and the State sought review. On review to this court, we held that admitting evidence of defendant's prior conviction for sexual assault was not an erroneous exercise of discretion. We held that other-acts evidence is relevant to sexual assault cases (particularly those of children), because a normal juror would presume that the defendant was incapable of such a depraved act. *Davidson,* 236 Wis. 2d 537, ¶ 42. We also noted the "difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence." *Id.* In light of such difficulty, we held that the greater latitude rule "support[s] the more liberal standard of admissibility in child sexual assault cases." *Id.* (citing *State v. Friedrich,* 135 Wis. 2d at 30–33 and n.17. However, the greater latitude rule does not relieve the court of the duty to ensure that the other-acts evidence is offered for a proper purpose under Wis. Stat. § 904.04(2). *Davidson,* 236 Wis. 2d 537, ¶ 52 (citing *Plymesser,* 172 Wis. 2d at 598).

¶ 88. Applying the above rules to the facts of this case, we hold that that the circuit court was correct here in applying the greater latitude rule in the determination of whether other-acts evidence was admissible. Accordingly, we hold that the court of appeals was in error in its determination regarding the applicability of greater latitude in sex crimes cases, particularly when a child victim is involved.

## V. CONCLUSION

¶ 89. In summary, we hold that the court of appeals erred in reversing the circuit court's conviction of Hunt on all six counts. Although the circuit court could have provided a more detailed *Sullivan* analysis for admitting other-acts evidence, reversal was not appropriate here.

¶ 90. We hold that pursuant to the well-established independent review doctrine in Wisconsin, the court of appeals is required independently to review the record if the circuit court fails to provide a detailed *Sullivan* analysis. As a result, based upon our own independent review of the record, we hold that the circuit court had reasonable bases for admitting the other-acts evidence under Wis. Stat. § 904.04(2). Such evidence was properly admitted for the purposes of motive, opportunity, intent, absence of mistake or accident, and context. The circuit court properly admitted the other-acts evidence to provide the necessary background for understanding Hunt's behavior and to provide an independent source to judge the victims' credibility, and their state of mind, in light of their past acts of recanting prior charges against Hunt. The other-acts evidence was relevant. Also, its probative value was not substantially outweighed by danger of unfair prejudice due to the circuit court's cautionary jury instructions, which were important in offsetting any prejudicial effect.

¶ 91. Next, we hold that here, where permissible purposes existed for the admission of other-acts evidence, and where strong DNA evidence had been introduced, the court of appeals was not correct in reversing the convictions on all counts. The conviction on the charge of first-degree sexual assault causing pregnancy

48

should have been upheld, even if there were not permissible purposes for the admission of other-acts evidence.

¶ 92. Finally, we hold that the circuit court properly applied the greater latitude rule in allowing other-acts evidence in this case where there were charges of sex crimes, especially since child victims were involved.

¶ 93. We therefore reverse.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 94. ANN WALSH BRADLEY, J. *(dissenting).* The majority takes the circuit court to task for failing to provide a detailed or exhaustive *Sullivan* three-prong analysis in determining the admissibility of other acts evidence. It criticizes the court of appeals for avoiding the careful step-by-step analysis set forth in *Sullivan.* Then, after explaining the careful analysis required by *Sullivan* and reaffirming its vitality, the majority inexplicably neglects to engage in the mandated analysis.

¶ 95. The majority, like the circuit court, fails to carefully analyze each item of other acts evidence to ensure that it does not merely color the defendant's character, but legitimately serves a permissible purpose. Its "kitchen sink" listing of permissible purposes without adequate analysis of how each item of other acts evidence is relevant to the identified purpose falls short of the approach required by *Sullivan.* I write to emphasize that the *Sullivan* mandate includes a careful statement of a clearly articulated purpose of each piece of other acts evidence and an analysis of whether that evidence is relevant to the purpose.

¶ 96. In *Sullivan,* we observed that the introduction of other acts evidence creates a risk that jurors will punish the accused for being a bad person regardless of

his or her guilt of the crime charged. *State v. Sullivan,* 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998). We cited *Whitty* which set forth the following reasons for excluding other acts evidence:

> "(1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes."

*Id.* at 782–83 (citing *Whitty v. State,* 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967).

¶ 97. To protect against the improper admission of other acts evidence, the *Sullivan* court described a three-pronged analysis to be used in determining whether to admit other acts evidence. This analysis requires a circuit court to consider (1) whether the other acts evidence is offered for a permissible purpose; (2) whether the other acts evidence is relevant; and (3) whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. *Sullivan,* 216 Wis. 2d at 772.

¶ 98. The *Sullivan* court observed that the absence of careful statements regarding the rationale for admitting or excluding other acts evidence substantially increases the likelihood for trial court error and makes appellate review more difficult. *Id.* at 774. The analysis set forth in *Sullivan* requires a clearly articu-

lated purpose of each piece of other acts evidence and an assessment of whether that evidence is relevant to the purpose.

¶ 99. The proponent of other acts evidence must clearly articulate the purposes for which it is intended and apply the facts to the analytical framework. *Id.* Similarly, the court's obligation is to clearly articulate its reasoning for admitting or excluding other acts evidence, applying the facts of the case to the three-prong analysis. *Id.* Thus, I agree with the majority opinion that the circuit court erred in failing to perform the required analysis and neglecting to clearly articulate its reasoning for admitting the other acts evidence. Majority op., ¶ 3.

¶ 100. The majority, however, fares little better in its attempt to articulate its reasoning in a manner that satisfies *Sullivan*. Its inadequate analysis is particularly apparent in its explanation of how the other acts evidence satisfies the first and second prongs of *Sullivan*.

¶ 101. The majority cites to a litany of permissible purposes that it considers to be applicable in this case. In ¶ 59, the majority opines that the other acts evidence was permissible to show the victims' state of mind, to corroborate information provided by the police, and to establish the credibility of victims and witnesses in light of their recantations. The opinion, however, fails to reference which of the 15 enumerated other acts related to which purpose.[1]

---

[1] Hunt's brief-in-chief before this court contained a list of 15 other acts introduced at trial. According to Hunt, this list was not exhaustive and the admission of the other acts permeated the proceedings.

¶ 102. After listing these purposes as applicable to this case, some of them disappear from sight. The opinion does not take any of these purposes through the second and third prongs of the *Sullivan* analysis and does not include them in the list of purposes for which the evidence was properly admitted. *See* majority op., ¶ 90. Likewise, in a tag along line at the end of ¶ 59, the majority raises the purposes of preparation or plan. They also disappear from the opinion without further analysis.

¶ 103. Next, in ¶ 60, the majority adds the dual purposes of establishing opportunity and motive. Yet it never explains what other acts evidence is offered for those purposes. In ¶ 61, the majority again makes a generic reference to other acts evidence and concludes that it is "relevant to show that Hunt did not touch the victims by accident or mistake." Without a proffered analysis, it is difficult to understand the relevance given that Hunt never raised accident or mistake as part of his defense.

¶ 104. Even more troubling is the majority's discussion of why the other acts evidence satisfies the second prong of the *Sullivan* analysis. In this discussion, the majority concludes that the other acts evidence was relevant for the purposes of showing context, opportunity, intent, absence of mistake or accident, and motive. Majority op., ¶ 62.

¶ 105. To support this conclusion, the opinion cites excerpts from a motion hearing which contain arguments regarding admitting the evidence for the purposes of showing context. These excerpts also vaguely refer to the purposes of showing the defendant's state of mind, the victims' and the witnesses' state of mind, absence of mistake or accident, motive, and opportunity. The reference to these ex-

52

cerpts is the extent of the majority's articulation of the reasons why the other acts evidence was relevant.

¶ 106. The excerpts are woefully inadequate in articulating the reasons for relevance. Rather than attempt to set forth the reasons, the majority simply concludes that the other acts evidence was relevant for the purposes of showing context, motive, opportunity, intent, and absence of mistake or accident because of "the reasons offered by the State and the decision of the circuit court." Majority op., ¶ 67. Apparently the majority now decides to rely on the reasoning of the circuit court even though it determined that the circuit court "could have provided a more detailed or exhaustive *Sullivan* analysis for admitting the other-acts evidence in this case . . . ." Majority op., ¶ 3.

¶ 107. Nowhere in the paragraphs leading up to this conclusion does the majority state the reasons offered by the State and the circuit court for why the other acts evidence was relevant to motive, opportunity, intent, or absence of mistake or accident. Nowhere in the analysis assessing relevance is there any discussion of similarity between the other acts and the charged offenses. A comparison of the nearness of time, place, and circumstance is central to, but completely absent from the majority's analysis. Yet, in ¶ 64, the majority acknowledges that such a discussion is mandated by the *Sullivan* second prong.[2]

---

[2] In ¶ 64, the majority emphasizes the import of the mandated analysis:

> "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *State v. Gray*, 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999). Similarity is demonstrated by showing the "nearness of time, place, and circumstance" between the other act and the alleged crime. *State v. Scheidell*, 227 Wis. 2d 285, 305, 595 N.W.2d 661 (1999). . . . Even

¶ 108. It is not surprising that the majority does not attempt to explain the reasons because, with respect to many of the identified purposes, it is difficult to articulate any persuasive justification for why the other acts evidence is relevant. It is also not surprising because, as predicted by the *Sullivan* court, the absence of a circuit court's careful statements regarding the rationale for admitting other acts evidence makes appellate review difficult. *Sullivan,* 216 Wis. 2d at 774.

¶ 109. Nevertheless, the majority criticizes the court of appeals for failing to conduct an independent *Sullivan* analysis. Curiously, although paying lip service to the *Sullivan* framework, the majority itself fails to engage in the step-by-step analysis mandated by *Sullivan.* Given the laundry list of other acts evidence admitted, the litany of permissible purposes accepted by the circuit court, and the lack of the development of the record regarding the nature of each item of other acts evidence, I think this case should be remanded to the circuit court for a proper *Sullivan* analysis.

¶ 110. In sum, *Sullivan* mandates a careful statement of a clearly articulated purpose of each piece of other acts evidence and an analysis of whether that evidence is relevant to the purpose. Because neither the circuit court nor the majority conducted a proper *Sullivan* analysis of the other acts evidence admitted in this case, I respectfully dissent.

¶ 111. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

when evidence may be considered too remote, the evidence is not necessarily rendered irrelevant if the remoteness is balanced by the similarity of the two incidents. . . .