COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP1303-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2011CF1652

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MAURICE DEANGELO STOKES,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Milwaukee County: RICHARD J. SANKOVITZ and JEFFREY A. WAGNER, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Maurice Deangelo Stokes appeals from a judgment of conviction for first-degree intentional homicide, as a party to a crime and with use of a dangerous weapon, and orders of the postconviction court denying Stokes's claims of ineffective assistance of counsel, newly discovered evidence, trial court error in admitting other-acts evidence and instructing the jury, and an erroneous exercise of discretion by the trial court at the time of sentencing related to imposition of a DNA surcharge.[1]  For the reasons set forth below, we affirm.

## BACKGROUND

¶2     Terry James Baker was shot and killed on October 29, 2005.  Stokes was subsequently charged for his role in Baker's death and convicted of first-degree intentional homicide, as a party to a crime and with use of a dangerous weapon.[2]

¶3     At Stokes's jury trial, two eyewitnesses to Baker's death, James Turner and Michael Henderson,[3] testified and identified Stokes as one of two individuals who were chasing Baker down the street and into an alley, and shooting at Baker on October 29, 2005.  In addition to describing the shooting, Turner further testified that he approached Baker as Baker was lying on the ground after the shots were fired, and tried to talk to him.  Turner testified that

---

[1] The Honorable Richard J. Sankovitz presided over the trial and sentencing and entered the judgment of conviction.  The Honorable Jeffrey A. Wagner entered the orders denying Stokes's postconviction motions.

[2] Stokes's co-actor, Cyrus Brooks, was determined to be the person who fired the fatal shots.  Brooks was tried and convicted in a separate proceeding.

[3] In his brief, Stokes refers to witnesses by their initials.  We refer to them by their names.

2

Baker did not respond, and he knew at that point that Baker was dead. Turner also testified that in the days prior to the shooting, Stokes and his co-actor, Cyrus Brooks, had approached Turner and warned him that he "better stop hanging round" Baker because "[h]e a dead man." Henderson also described that after he saw Baker being chased down the street and heard the shots fired, he went into his house to look out the back window that faced the alley "[t]o see what was going on." Henderson testified that he saw people in the yard and Baker was lying down.

¶4    Prior to trial, the State filed a motion in limine and sought to admit evidence of an altercation that occurred on October 23, 2005, in which Stokes, Brooks, and a third individual were seen shooting at Baker. The trial court granted the State's motion and allowed admission of this evidence for purposes of showing motive. Thus, pursuant to the trial court's ruling, Xavien Bates testified at trial about the prior altercation, stating that he was with Baker on October 23, 2005, when three individuals started shooting at him and Baker. Bates indicated that he knew the three individuals to be Stokes, Brooks, and an individual he identified as Randell. The State also presented testimony from police officers about this altercation and played surveillance video from a nearby business, showing Baker and Bates running.[4]

¶5    In his defense at trial, Stokes's mother and sister testified and indicated that Stokes was not the shooter. Stokes's mother described witnessing a

---

[4] One of the detectives that was called to testify about this October 23, 2005 altercation also provided testimony about a third incident. The State objected to this testimony. The trial court excluded evidence of this third altercation and also provided a cautionary instruction to the jury in which it told the jury to disregard the detective's testimony about this altercation.

young man, who was not Stokes, crouching near a dumpster and firing shots. She further testified that shortly after the shooting, several people broke into her house, causing significant damage to her front door and front porch area. She also testified that Stokes lived with her, but he was not home at the time of the shooting, and he did not come home in the days after the shooting. However, she testified that Bates was arrested at her house. Stokes's sister testified that she went to her mother's house on the day of the shooting to see what the commotion was at her mother's house, and ended up in an altercation with a member of Baker's family. She testified that she believed that it was Baker's family and friends at her mother's house that day who were causing damage to her mother's house, and that after the police diffused the situation, she told the police that her brother was at her house playing video games at the time of the shooting.

¶6 The jury found Stokes guilty and the court sentenced him to life in prison with eligibility for release to extended supervision after serving twenty-three years of his sentence.

¶7 Stokes has since filed three postconviction motions, all of which were denied without a hearing. In the first motion filed on October 13, 2014, Stokes alleged that the trial court erroneously admitted evidence of the prior shooting that occurred on October 23, 2005, and that his trial counsel was ineffective for eliciting testimony from a detective about a third shooting incident. Stokes filed his second postconviction motion on November 18, 2016, in which he argued that the jury was erroneously instructed regarding the October 23rd incident, he had newly discovered evidence entitling him to a new trial, and the trial court considered improper factors at the time of sentencing. Stokes filed his third postconviction motion on November 26, 2019, in which he argued that he

received ineffective assistance of counsel and he had newly discovered evidence. Stokes now appeals.

## DISCUSSION

¶8 A defendant is not automatically entitled to an evidentiary hearing following a postconviction motion. "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *See State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," a trial court may deny a postconviction motion without a hearing. *See id.*, ¶9. Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

### I.  Ineffective Assistance of Counsel

¶9 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.*

¶10 "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of

5

reasonableness' considering all the circumstances." ***State v. Carter***, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Prejudice occurs when counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. ***State v. Erickson***, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." ***Cullen v. Pinholster***, 563 U.S. 170, 189 (2011) (citations omitted).

¶11 "An ineffective assistance of counsel claim presents a mixed question of fact and law." ***State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they are clearly erroneous." ***Id.*** "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." ***Id.***

### A. Failure to Investigate and Call Witnesses

¶12 Stokes argues that his trial counsel was ineffective for failing to investigate and call Kathleen Trammell, Devon Johnson, and Farice Campbell as witnesses.[5] We disagree, and we conclude that Stokes has failed to demonstrate prejudice and, therefore, his claim for ineffective assistance of counsel in this regard fails. *See* ***State v. Floyd***, 2016 WI App 64, ¶22, 371 Wis. 2d 404, 885 N.W.2d 156 ("If the defendant fails to prove either prong, we need not address whether the other prong was satisfied.").

---

[5] We note that the State does not raise an argument in response to Stokes's arguments about Johnson and Campbell, and Stokes fails to re-visit any argument about Johnson and Campbell in his reply brief.

¶13    Stokes's argument as to each of the three witnesses is that each told the police that he or she saw only one male running away from the scene of the shooting. Stokes maintains that Trammell would have testified that she saw one individual fleeing into her backyard by jumping over the fence. He contends that Johnson and Campbell both similarly witnessed the individual who was fleeing the scene of the crime, while possessing a firearm. Further, he states that Johnson and Campbell viewed an in-person lineup in which Stokes was a participant and could not identify Stokes as the person running away with a firearm.[6]

¶14    Stokes argues that all three witnesses only saw one individual running from the scene of the shooting with a firearm. He then argues that all three of these witnesses are important witnesses. As to Trammell, he states that she could have assisted him at trial because she "was a neutral eyewitness." Stokes further states that trial counsel was aware of Trammell, he should have reached out to her, and he had no strategic reason for not calling her as a witness. As to Johnson and Campbell, Stokes states that "[t]here is no question that these witnesses were vital to the defense" and there can be no strategic reason for failing to call them as witnesses at trial.

¶15    Addressing the prejudice component of ineffective assistance, Stokes contends that "[t]he testimony of these witnesses could have influenced the jury greatly in deciding this case. Here there are three eye-witnesses who cannot

---

[6] We note that Stokes omits the fact that when the lineup was completed, Detective David Salazar asked Johnson why she marked no for all six of the participants in the lineup. Johnson told the detective that she "had not had a long amount of time to view the suspect fleeing the scene of the crime and that due to that fact, she did not believe she would be able to recognize the suspect."

identify Stokes as the individual they saw fleeing the scene. Stokes is clearly prejudiced by not having these witnesses testify at trial."

¶16 However, the potential testimony of Trammell, Johnson, and Campbell does not exclude the possibility of Stokes's involvement with Baker's death, and it is not inconsistent with the evidence introduced at trial that two people—Stokes and Brooks—were involved in Baker's death. Indeed, the testimony at trial was that Turner was in the backyard with Baker after the shots were fired, and Henderson saw Brooks run into the alley and also saw people in the area while Baker was on the ground. Thus, the testimony from Trammell, Johnson, and Campbell adds nothing to the evidence already introduced at trial and is even consistent with the evidence that has already been established. Moreover, as the postconviction court noted that none of the three witnesses "affirmatively state that [Stokes] and/or Brooks were not the person they saw involved in the shooting. The absence of evidence is not evidence." As such, Stokes has failed to demonstrate prejudice because he has not provided anything that would undermine our confidence in the outcome and provide a reasonable probability that the outcome would have been different, if trial counsel investigated and called Trammell as a witness at trial.[7] *See Floyd*, 371 Wis. 2d 404, ¶22.

---

[7] Further, we conclude that Stokes inadequately pled his prejudice claim. We conclude that his allegations of the importance of Trammell's, Johnson's, and Campbell's testimony are subjective opinions and conclusory and, therefore, he was not entitled to a hearing. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

### B.     Introduction of a Third Altercation

¶17     Stokes also argues that his trial counsel was ineffective for eliciting testimony on cross-examination from a police detective about a third altercation. At trial, the State called Detective Louis Johnson to testify about a photo array conducted with Bates in connection with the October 23rd altercation. During cross-examination, Stokes's trial counsel began questioning Detective Johnson about an altercation described in a police report Detective Johnson prepared. When it became clear that the incident that trial counsel was questioning Detective Johnson about was a separate third incident, the prosecutor objected, and the trial court stopped this line of questioning. Stokes now argues that trial counsel's performance was deficient because the line of questioning evinced a fundamental misunderstanding of the police report, and he was prejudiced because the testimony about a third incident made it appear to the jury as if there was a pattern of behavior involving shootings with Stokes, Brooks, and Baker.

¶18     We again reject Stokes's claim of ineffective assistance of counsel and conclude that there is no reasonable probability of a different result. Detective Johnson's testimony on this topic was short and was not developed. The trial court also provided a curative instruction following Detective Johnson's testimony and before taking further testimony in which it made clear to the jury that Detective Johnson's testimony about this incident was to be disregarded. The trial court instructed the jury as follows:

> You heard some testimony about a person whose nickname is Runthang and you heard about an incident involving Runthang and a weapon that was referred to by it's caliber as a .223. The parties agree that that incident describing, or that involved Runthang and the [.]223 was not the incident that occurred on October 23rd, 2005. It is a separate incident.

9

> The parties agree they are not going to pursue it any further and it wouldn't be helpful for you to consider it any further either. So, we are not going to go any further into that and you can disregard the testimony about Runthang and the .223.

We presume that the jury follows instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Thus, we conclude that Stokes has failed to demonstrate prejudice, and as a result, his claim of ineffective assistance of counsel fails. *See Floyd*, 371 Wis. 2d 404, ¶22.

## II. Newly Discovered Evidence

¶19 Stokes additionally argues that he is entitled to a new trial as a result of newly discovered evidence from three additional witnesses: Corey Toliver, Brandon Brumfeld, and Shawnrell Simmons. As Stokes contends, Toliver revealed evidence that is "directly relevant to the credibility of a purported eye-witness who testified at trial" because Toliver revealed that Turner lied when he implicated Stokes in the shooting. Stokes additionally contends that Brumfeld can "affirmatively exclude" Stokes from the group of men who were looking for Baker in the days prior to the shooting, that Stokes and Baker were not angry with each other, and Brumfeld was pressured to implicate Stokes. Stokes further contends that Simmons would provide testimony that Turner did not actually witness the shooting and Simmons was bribed by Baker's family to testify against Stokes. Stokes last argues that the resolution of Bates's criminal charges that were pending at the time of Stokes's trial is newly discovered evidence entitling Stokes to a new trial, or an evidentiary hearing. We disagree, and we conclude that Stokes has not presented newly discovered evidence.

¶20 The decision to grant a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion. *State v. Avery*,

2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60. To be entitled to a new trial based on newly discovered evidence "a defendant must prove:  '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).  "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly[]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.*

¶21    "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Avery*, 345 Wis. 2d 407, ¶25.  "A court reviewing the newly discovered evidence should consider whether a jury would find that the evidence 'had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt.'" *Id.* (citation omitted).  "This latter determination is a question of law." *See Plude*, 310 Wis. 2d 28, ¶33.

¶22    Turning to the affidavits produced from Toliver and Simmons, we conclude that they were properly rejected by the postconviction court for two reasons.  First, the statements provided in the affidavits are inadmissible hearsay and amount to a recantation of Turner's trial testimony that is unsupported by any corroborating evidence.  *See State v. McCallum*, 208 Wis. 2d 463, 477-78, 561 N.W.2d 707 (1997).  Second, the affidavits are cumulative of evidence that was previously offered at trial because Turner's credibility as a witness was already thoroughly vetted at trial both on direct and cross-examination.  *See State v. McAlister*, 2018 WI 34, ¶39, 380 Wis. 2d 684, 911 N.W.2d 77 ("Where the

credibility of a prosecution witness was tested at trial, evidence that again attacks the credibility of that witness is cumulative.").

¶23 At the trial, Turner was questioned regarding his presence at the scene of the shooting death of his friend and his decision to leave before the paramedics or the police arrived. He was further questioned about the inconsistencies in his statements to police where he testified that he lied in the first statement that he gave to the police about his witnessing the shooting because he feared for the safety of his family, given that Stokes and Brooks were still in the area. Turner then explained that he ultimately went to the police himself and provided a statement about what he saw when his family was no longer living in that area. The affidavits from Toliver and Simmons would only test the credibility of Turner further. "Evidence which merely impeaches the credibility of a witness does not warrant a new trial on this ground alone." *Greer v. State*, 40 Wis. 2d 72, 78, 161 N.W.2d 255 (1968).

¶24 Moving to Brumfeld's affidavit, there is no reasonable probability of a different result. At trial, the State presented testimony from Turner and Henderson placing Stokes at the scene of the shooting. The defense also presented testimony from Stokes's mother that she saw someone else "kneeling down shooting from the dumpster" and testimony from Stokes's sister that Stokes was at her house playing video games around the same time as the shooting. In light of the evidence that the jury already heard at trial, there is no reasonable probability that the jury would have a reasonable doubt as to Stokes's guilt if it now heard Brumfeld's testimony. At best, Brumfeld's affidavit establishes that other people, in addition to Stokes, were looking for Baker and sought to do Baker harm. Brumfeld's affidavit in no way excludes Stokes as a possible suspect, undercuts

the State's evidence presented at trial, or adds to the defense already presented at trial that was rejected by the jury.

¶25    Last, any new developments in the resolution of Bates's criminal cases that were pending at the time of Stokes's trial are not newly discovered evidence because any such developments would be cumulative. Based on the testimony elicited at trial, the jury was already aware that Bates had previously been convicted of a crime and was also facing additional criminal charges at the time of Stokes's trial. Indeed, Bates was cross-examined regarding any "credit" he might receive for testifying at Stokes's trial. Any additional information about the resolution of Bates's criminal charges would be cumulative impeachment evidence. *See McAlister*, 380 Wis. 2d 684, ¶39.

¶26    Accordingly, we conclude that Stokes has failed to present newly discovered evidence that entitles him to a new trial or an evidentiary hearing.

### III.    Admission of Other-Acts Evidence

¶27    Stokes further argues that the trial court erroneously admitted evidence of the "altercation" on October 23, 2005, between Stokes, Brooks, and Baker in which shots were also fired. The State argues that evidence of this altercation was properly admitted as other-acts evidence to provide proof of identity.[8] We conclude that evidence of the altercation on October 23, 2005, was

---

[8] The State makes two additional arguments: (1) evidence of the October 23, 2005 incident was properly admitted as panoramic evidence and (2) even if the evidence was erroneously admitted, any error is harmless error. We do not address either argument by the State because we conclude that the testimony was properly admitted as other-acts evidence for purposes of proving motive and intent. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

properly admitted as other-acts evidence for purposes of proving motive and intent.

¶28 WISCONSIN STAT. § 904.04(2)(a) "prohibits the admission of evidence of a defendant's other bad acts to show that the defendant has a propensity to commit crimes." *State v. Marinez*, 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399. However, other-acts evidence may be admissible in certain circumstances, and we review the admissibility of other-acts evidence under a three-step test. *See State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). First, we consider whether the other-acts evidence is offered for a permissible purpose under § 904.04(2). *Sullivan*, 216 Wis. 2d at 772. Second, we ask whether the evidence is relevant under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. Third, we consider whether, under WIS. STAT. § 904.03, "the probative value of the other[-]acts evidence substantially outweigh[s] the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence[.]" *Sullivan*, 216 Wis. 2d at 772-73.

¶29 "The applicable standard for reviewing a circuit court's admission of other[-]acts evidence is whether the court exercised appropriate discretion." *Id.* at 780. Under this standard, we will sustain the circuit court's evidentiary ruling if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771. However, "[e]ven if a circuit court fails to set forth the basis for its ruling, we will nonetheless independently 'review the record to determine whether it provides an appropriate basis for the circuit court's decision.'" *Marinez*, 331 Wis. 2d 568, ¶17 (citation omitted).

14

¶30    Turning to the first step, evidence of the October 23rd altercation was admitted to show proof of motive as evidence of an ongoing dispute between Stokes and Brooks and Baker that provided a reason for Stokes to chase and shoot at Baker just six days later on October 29, 2005, and also to aid and abet Brooks in chasing and shooting at Baker. The prior altercation is also offered to show intent because the altercation provides insight into Stokes's state of mind at the time and indicates that, as a result of an ongoing dispute, Stokes's intention was to kill Baker, or aid and abet Brooks in doing so, in furtherance of settling the ongoing dispute. Thus, we conclude that evidence of this altercation was properly offered for the permissible purposes of motive and intent. *See* WIS. STAT. § 904.04(2) (listing motive and intent as permissible purposes).

¶31    In reaching this conclusion, we recognize that the State argues that the evidence was properly admitted as other-acts evidence for purposes of proving identity. However, while the State argued that this evidence was offered for the purpose of showing proof of identity, the trial court originally analyzed this evidence for proof of motive, even if the analysis was not conducted as an other-acts analysis. Not only do we review the trial court's decision for an erroneous exercise of discretion in an other-acts evidence analysis, but this court has an independent duty to review the record for an appropriate basis to support the trial court's decision to admit this evidence. *See Sullivan*, 216 Wis. 2d at 781; *see also Marinez*, 331 Wis. 2d 568, ¶17. Thus, we conclude that the evidence was offered for the permissible purposes of motive and intent, and we turn to the second step of the analysis.

¶32    Under the second step, we consider "the two facets of relevance." *See Sullivan*, 216 Wis. 2d at 772; *see also* WIS. STAT. § 904.01 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). "The first consideration in assessing relevance is whether the other[-]acts evidence relates to a fact or proposition that is of consequence to the determination of the action." *Sullivan*, 216 Wis. 2d at 772. "The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other[-]acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence." *Id.* "[T]he probative value of the other[-]acts evidence depends on its nearness in time, place and circumstances to the alleged crime." *State v. Barreau*, 2002 WI App 198, ¶37, 257 Wis. 2d 203, 651 N.W.2d 12.

¶33    We conclude that evidence of the October 23rd altercation was relevant. In this case, the fact or proposition to be proved as an element of the crime was whether Stokes intentionally aided and abetted Brooks in committing the crime of first-degree intentional homicide, or the lesser-included offense of first-degree reckless homicide on which the jury was instructed.[9] *See* WIS. STAT. §§ 940.01(1)(a), 940.02(1), 939.05. The October 23rd altercation, as noted above, relates to this proposition because it is evidence of an ongoing dispute indicating that Stokes and Brooks were motivated to settle the dispute by either intentionally killing Baker or recklessly shooting at him. Evidence of the altercation also makes

_____

[9] We further note that the elements of party to a crime liability also included that Stokes knew that Brooks was intending or intended to commit the crime of first-degree intentional homicide or was intending or intended to commit the crime of first-degree reckless homicide; that Brooks caused the death of Baker; that Brooks acted with intent to kill Baker or that Brooks acted in a criminally reckless manner; and as to the reckless offense, that Brooks' conduct showed utter disregard for human life. *See* WIS JI—CRIMINAL 400. Thus, the evidence of the October 23rd altercation was relevant in proving the motive and intent of not only Stokes, but also the motive and intent of Brooks.

this fact or proposition more probable because it points to Brooks as the shooter on the night of Baker's death given that the altercation, which happened in the same general area, in the same manner, and just days prior, points to Stokes and Brooks as the persons who were looking for Baker for purposes of settling an ongoing dispute. Accordingly, we conclude that the second step is satisfied, and we turn to the third step.

¶34 Under the third step, Stokes argues that the probative value of the altercation was substantially outweighed by the danger of unfair prejudice. We do not agree. First, we note that Stokes bears the burden on this point and his argument is conclusory in nature. *See Marinez*, 331 Wis. 2d 568, ¶19. Further, when we analyze this step, we analyze whether the evidence has a tendency to influence the outcome by improper means. *See State v. Johnson*, 181 Wis. 2d 470, 493, 510 N.W.2d 811 (Ct. App. 1993). We discern no influence by improper means by the admission of evidence of the October 23rd altercation. Moreover, the similarities between the October 23rd altercation with the October 29th shooting gives the October 23rd altercation strong probative value, and the strength of this probative value is not substantially outweighed by any danger of unfair prejudice. *See State v. Gutierrez*, 2020 WI 52, ¶¶34-36, 391 Wis. 2d 799, 943 N.W.2d 870.

¶35 We also note that the trial court provided a cautionary instruction to the jury in order that the jury would understand how to use the evidence of the altercation on October 23, 2005. The trial court instructed the jury that this evidence was presented to demonstrate:

> First, that Mr. Stokes was one of the persons involved in the later shooting on October 29th, 2005;

17

Second, that Mr. Brooks intended to kill Mr. Baker on October 29th, 2005, and that Mr. Stokes knew that Mr. Brooks intended to kill Mr. Baker; and

Third, that Mr. Stokes had a motive for aiding and abetting Mr. Baker's homicide. If you believe Xavien Bates' testimony, you may conclude that Mr. Stokes was one of the persons involved in the later shooting on October 29th, 2005, that Mr. Brooks intended to kill Mr. Baker, that Mr. Stokes knew Mr. Brooks intended to kill Mr. Baker, and that Mr. Stokes had a motive to commit the crime with which he is charged, although, you're not required to reach any such conclusion.

The testimony about the shooting on October 23rd, 2005, was admitted only as it relates to Mr. Stokes' identity, Mr. Brooks['] intent, Mr. Stokes['] knowledge of Mr. Brooks' intent, and Mr. Stokes' alleged motive. The evidence may not be used for any other purpose, and in particular, and you may not find Mr. Stokes guilty of the charge in this case or the lesser included offense merely because you may believe he was guilty of being involved in a different shooting.

"[C]autionary instructions help to limit any unfair prejudice that might otherwise result." **Hunt**, 263 Wis. 2d 1, ¶72. Thus, we conclude that the probative nature of the October 23rd altercation was not substantially outweighed by any danger of unfair prejudice, and the evidence of the October 23rd altercation was properly admitted as other-acts evidence.

### IV.  Jury Instruction

¶36   Stokes additionally argues that the trial court's cautionary instruction to the jury regarding the appropriate use of the October 23rd altercation was erroneous and the trial court should have instructed the jury using the pattern jury instruction WIS JI—CRIMINAL 275. We conclude that Stokes has forfeited any argument regarding the trial court's instruction. As the State highlights, Stokes's trial counsel raised no objection to this instruction and in fact made a strategic decision to agree with its use because "it's better for the jury to understand why

this evidence has been presented and to reaffirm that Mr. Stokes cannot be found guilty … simply because the jury believes he might have been a participant in an earlier incident." The failure to object to this instruction is fatal to Stokes's claim, and therefore, we do not address it further. *See* WIS. STAT. § 805.13(3) ("Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."); *see also **State v. Trammell***, 2019 WI 59, ¶24, 387 Wis. 2d 156, 928 N.W.2d 564.[10]

¶37 Stokes attempts to overcome forfeiture and argues in his reply brief that he has raised his argument about the jury instruction in the context of a claim of ineffective assistance of counsel. Stokes may have raised this argument in the context of ineffective assistance in his postconviction motion, but he has not developed that argument in his briefs on appeal. Thus, we consider any argument that his trial counsel was ineffective for failing to object to the instruction to be abandoned on appeal. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

## V. Imposition of the DNA Surcharge

¶38 Stokes finally argues that the trial court erroneously exercised its discretion at the time of sentencing when it imposed a DNA surcharge for purposes of punishing Stokes. As Stokes contends, the DNA surcharge is not intended for purposes of punishing the defendant, but rather for purposes of

---

[10] We note that in *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612, our supreme court said that "[a]lthough cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'"

reimbursing costs. In response, the State raised an argument that the trial court properly exercised its discretion at the time of sentencing based on the law as it existed at the time of the offense. Stokes failed to raise any argument in his reply brief to refute the argument made by the State. As such, we consider Stokes to have conceded this issue, and we do not address it further. *See **United Coop. v. Frontier FS Coop.**,* 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).

## CONCLUSION

¶39     In sum, we conclude that Stokes has failed to establish ineffective assistance of counsel, either because his trial counsel failed to investigate and call Trammell, Johnson, or Campbell as witnesses or because trial counsel elicited testimony from Detective Johnson about a third altercation. We also conclude that Stokes has failed to provide newly discovered evidence. We additionally conclude that the trial court properly admitted evidence of the October 23, 2005 altercation as other-acts evidence. Last, we do not address either of Stokes's arguments that the trial court erroneously instructed the jury regarding the appropriate use of the October 23, 2005 altercation because he waived that claim by not objecting at trial, or that the trial court erroneously imposed a DNA surcharge because he conceded the State's argument. Accordingly, we affirm.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

20