COURT OF APPEALS
DECISION
DATED AND FILED

July 25, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1937-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF2900

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSE A. AREVALO-VIERA,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

¶1 WHITE, J. Jose A. Arevalo-Viera appeals from a judgment, entered upon a jury's verdict, for four counts of first-degree sexual assault, one count of second-degree sexual assault, one count of kidnapping as a party to a crime, and one count of armed robbery. Arevalo-Viera argues that the trial court erred when it admitted other-acts evidence of attempted similar conduct. We conclude that

the trial court's decision to admit the evidence was within its discretion. Accordingly, we affirm.

## BACKGROUND

¶2    This case arises out of M.D.'s allegations that she was forcibly abducted on June 16, 2017, when Arevalo-Viera, armed with a box cutter and hammer, entered her vehicle after she exited Interstate 794.[1]  According to the criminal complaint, Arevalo-Viera ordered M.D. to drive to Chicago, but near the Milwaukee County border, he ordered her to stop and abandon her car, and forced her into the backseat of his co-actor's dark gray pickup truck.  Arevalo-Viera repeatedly asked M.D. if she "wanted to live"; held a box cutter up to her throat; and touched her thighs, breasts, and genital area without her consent.  While his co-actor drove the truck, Arevalo-Viera ordered M.D. to lay in the back seat, and then forced a finger into her vagina and slapped and punched her face multiple times.  Arevalo-Viera threatened to shoot M.D. if she did not remove her clothing. Arevalo-Viera inserted his penis in her vagina; she yelled and Arevalo-Viera's co-actor turned the radio louder.  After the assaults, Arevalo-Viera's co-actor stopped the truck and Arevalo-Viera allowed M.D. to exit, but he demanded her purse and mobile telephone.  She eventually found a truck driver who allowed to her call 911 from his phone.

¶3    The complaint further alleged Milwaukee police located and processed M.D.'s vehicle, which had been towed from the interstate.  A fingerprint

---

[1] To protect the privacy and dignity of the crime victims in these matters, we refer to them by initials.  *See* WIS. STAT. RULE 809.86 (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

was lifted from a resealable plastic bag in the vehicle; a comparison of the print showed it matched Arevalo-Viera's right middle finger.

¶4     The complaint further alleged that the police investigation discovered three unauthorized credit card transactions on M.D.'s credit card: two at a restaurant in Chicago, Illinois, and one at a gas station near Louisville, Kentucky, all on June 17, 2017. The police also obtained a warrant for Google Location Services data, which showed that at the relevant times to M.D.'s account of the abduction, only one cellular telephone was using that service at the site of the abduction in downtown Milwaukee, along the interstate near West Layton Avenue, and at the address of the Chicago restaurant where M.D.'s credit card was used. Google also provided subscriber information, which showed a subscriber name similar to Arevalo-Viera's first and middle name, as well as provided the cellular telephone number.

¶5     Using the name generated by the fingerprint, the police investigation located a woman believed to be Arevalo-Viera's mother, who lived in Louisville, and had a gray pickup truck registered in her name. Law enforcement in Kentucky went to her listed address and observed a vehicle parked outside with a for sale sign listing the cellular telephone number provided by Google. A search of the cellular number showed the number was associated with a carpentry business in Louisville that had Arevalo-Viera and his mother's names in the business title. Arevalo-Viera and his co-actor were arrested and charged.[2]

---

[2] Arevalo-Viera's co-actor was tried separately and his case is not in appeal before us in this matter.

¶6      In February 2019, the State moved to admit other-acts evidence, specifically an incident from Kenosha County earlier on the same day that M.D. was abducted.  In that incident, a pickup truck was closely following K.T.'s vehicle after she left a restaurant.  When both cars were stopped at a light, the driver of the pickup truck exited the car, approached K.T.'s car, and knocked on the window.  K.T. refused to lower the window, and told the man she was calling the police.  The man pulled a gun from the pickup truck and K.T. sped away, fearing for her safety.  The pickup truck again followed K.T.'s vehicle, and when stopped, a man exited the passenger side of the truck with a baseball bat.  K.T. again sped away and called 911.  She positively identified Arevalo-Viera as one of the individuals inside the pickup truck that followed her.

¶7      The State argued that the Kenosha evidence established Arevalo-Viera as the perpetrator of each offense based on his unique method of operation.  Further, it argued that the Kenosha evidence would dispel any claims by Arevalo-Viera that the sexual acts were consensual, demonstrate Arevalo-Viera's motive and intent, and establish that M.D. was not mistaken in her claims.

¶8      At the final pretrial, the court heard the State's motion to admit other-acts evidence.  Arevalo-Viera objected that there was not a unique method of operation:  M.D. alleged she had been kidnapped using a hammer and threatened with a box cutter, in contrast, the Kenosha allegations involved a baseball bat and a gun, and there was no abduction.  The trial court assessed the situation and noted that the acceptable purposes for other-acts evidence included method of operation, as well as identity and motive.  The court stated that the Kenosha evidence "actually identifies the defendant," and the court expected that "part of the defense is going to be that [M.D.] has the wrong person."  The court found that the evidence was offered for an acceptable purpose—identity.  It then

4

concluded that the evidence was relevant because identity was a "matter of consequence." Further, the court concluded that the Kenosha evidence had probative value because the allegations were similar and happened very close in time, within hours of the charged conduct. The court concluded the evidence was relevant.

¶9 The court then weighed the probative value against the prejudicial effect of the evidence, noting that the Wisconsin Supreme Court held that "if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted" in *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993). The court found that there was nothing in the Kenosha evidence that would shock the conscience of the jury or cause them to make a decision based on outrage. The court concluded that the prejudicial nature of the other-acts evidence could be dealt with through trial procedure and jury instructions.

¶10 Arevalo-Viera's counsel informed the trial court that identity would not be an issue with the defense and Arevalo-Viera did not deny being in the vehicle. The court then considered that "method of operation" would be an acceptable purpose, with the similarities of an intrusive interaction and threatening conduct. The prosecutor responded that the State may offer evidence to establish identity, even if it was not contested by the defendant, relying upon *State v. Plymesser*, 172 Wis. 2d 583, 594-95, 493 N.W.2d 367 (1992). Second, the prosecutor argued that the Kenosha evidence would be relevant to respond to the defense claim that this was a consensual encounter. Instead, the State argued that Kenosha evidence would show an absence of mistake on the part of M.D. that this was a violent assault.

¶11    The court concluded that "the absence of mistake … the intent and the method of his operation here … all comports with the very same analysis" that the court discussed for identification as an acceptable purpose of the other-acts evidence. The court ultimately concluded that the Kenosha evidence was admissible as other-acts evidence.

¶12    The case proceeded to a jury trial in June 2019. At trial, the State called Milwaukee Police Department (MPD) officers, detectives, analysts, and forensic investigators, who testified about physical evidence found on and in M.D.'s vehicle, DNA evidence, and cell phone tracking evidence.[3] There was also police testimony about the Google Location Services search methods, corresponding surveillance images of Arevalo-Viera throughout June 15 and 16, 2017, and video footage at various points along the alleged abduction route that showed M.D.'s vehicle and the dark gray pickup truck.

¶13    The State further presented the truck driver who found M.D. in the industrial complex parking lot near where she alleged Arevalo-Viera had released her, the security guard who met M.D. and the truck driver, and the Pleasant Prairie police officer who first interviewed M.D. M.D. testified in great detail about Arevalo-Viera's invasion of her vehicle, his threats to hurt her and his physical assaults punching her in the face, Arevalo-Viera's sexual assaults on her body, and her efforts to secure help after Arevalo-Viera and his co-actor let her leave the vehicle. The Sexual Assault Nurse Examiner (SANE) testified about injuries on M.D.'s person and the collection of physical evidence.

---

[3] We note that the State's case was substantially similar to what had been alleged in the criminal complaint and we recite a limited set of facts to give context to the other-acts evidence.

¶14 Relevant here, the State also asked to present the other-acts evidence by testimony from two women in the car allegedly followed by Arevalo-Viera in Kenosha. After reviewing the evidence, the court concluded that it would instruct the jury on motive and intent. The court instructed the jury:

> [T]his evidence is being given to you for the purpose of looking at and assessing this defendant's motive and that is defined as whether the defendant has a reason to desire the result of the offenses charged in this case, motive in this case, as well as intent, this defendant's intent, that is whether the defendant acted with the state of mind that is required for the offenses charged in this case. The intent element. And that is what it's being offered for and solely for those purposes for you to consider.
>
> You are not to consider this evidence to include that this defendant has any certain character or character trait. And that he acted in conformity with that character or character trait in terms of the charged offenses in this case. It is being received only for the purposes that I have described. And, again, that is his motive in this case and his intent in this case. And that is the only purpose for which you are to consider it.

¶15 The State called two women who alleged they had been followed by Arevalo-Viera in Kenosha hours before the abduction of M.D. First, K.T. testified that she and her friend, S.J., left a Kenosha restaurant around 11:00 p.m. on June 15, 2017. The State played her 911 call. She testified that a dark gray truck followed her very closely; she sped up and the truck was still so close she could not see the truck's headlights behind her. She tried to let the truck pass, but the truck pulled up next to her and a man, whom she later identified to police as Arevalo-Viera in a photographic array, got out of the truck and knocked on her window. When she would not roll down her window, the man returned to his truck and pulled out a long object that she feared was a gun. K.T. drove away and the truck continued to chase her; eventually, the passenger in the truck gets out of the vehicle wearing a mask and carrying a baseball bat. K.T. testified that she was

terrified and called 911 as she drove away quickly.[4]  The testimony from the second witness, S.J., was substantially similar.

¶16    For the defense case, Arevalo-Viera presented testimony of an MPD officer that M.D.'s car window had not been broken.  Arevalo-Viera testified in his own defense and portrayed a drastically different consensual encounter with M.D.  He also recalled trying to interact with the two women in Kenosha, but driving away when they were not interested.

¶17    To correct several small technical issues with the information, the State filed an amended information on the last day of trial, which then matched the seven counts that appeared on the verdict forms.  The counts all arose on June 16, 2017, involved M.D. as the victim, and occurred between East Clybourn Street in Milwaukee and an industrial complex parking lot in Pleasant Prairie, where M.D. was able to call 911:  (1) first-degree sexual assault, forcibly aiding and abetting, as to penis-to-vagina sexual intercourse in the pickup truck; (2) kidnapping, carries forcibly, as a party to a crime; (3) first-degree sexual assault, forcibly aiding and abetting, as to hand-to-breast sexual contact in M.D.'s vehicle; (4) first-degree sexual assault, forcibly aiding and abetting, as to hand-to-vagina sexual contact in the pickup truck; (5) first-degree sexual assault, forcibly aiding and abetting, as to finger-to-vagina sexual intercourse in the pickup truck, (6) first-degree sexual assault, forcibly aiding and abetting, as to hand-to-breast sexual contact in the pickup truck; and (7) armed robbery, as a party to a crime.

---

[4]  The police analysis of the location data also showed Arevalo-Viera in the same vicinity as K.T. and S.J. on June 15.

¶18    The jury reached a verdict, finding Arevalo-Viera guilty of all seven counts, although count three was a guilty verdict for the lesser charge of second-degree sexual assault.  In August 2019, the trial court imposed concurrent and consecutive sentences totaling 105 years of imprisonment, bifurcated as sixty-five years of initial confinement and forty years of extended supervision.

¶19    Arevalo-Viera appeals.

## DISCUSSION

¶20    Arevalo-Viera argues that the trial court erroneously exercised its discretion when it admitted the other-acts evidence about the Kenosha incident involving K.T. and S.J. on June 15, 2017.  Arevalo-Viera argues that the court failed to demonstrate its reasoning, referencing specific facts in the record, when it applied the necessary analytical framework.  For the reasons explained below, we reject Arevalo-Viera's arguments.

¶21    "A decision to admit or exclude evidence is within the [trial] court's discretion." *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870.  We review the trial court's decision on the admissibility of "other-acts evidence for an erroneous exercise of discretion." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399.  We will sustain an evidentiary ruling if the trial court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. John Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.  If the trial court fails to set forth a basis for its ruling, we will "independently 'review the record to determine whether it provides an appropriate basis for the [trial] court's decision.'" *Marinez*, 331 Wis. 2d 568, ¶17 (citation omitted).

9

¶22    Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  WIS. STAT. § 904.04(2)(a).  Evidence of other crimes, wrongs, or acts may be admitted under a three-prong analysis if:  (1) the evidence was offered for an acceptable purpose under § 904.04(2); (2) the evidence was relevant under WIS. STAT. § 904.01; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion, or delay under WIS. STAT. § 904.03.  *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).

¶23    The State moved to admit the Kenosha incident for the purposes of identity, motive, intent and absence of mistake, in other words, to show Arevalo-Viera's method of operation.  While "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," however, this rule "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  WIS. STAT. § 904.04(2)(a).  Arevalo-Viera concedes that the first prong of *Sullivan*, the acceptable purpose of the evidence, was satisfied by the State.  *See id*, 216 Wis. 2d at 772-73.

¶24    Arevalo-Viera argues that the court erred when it analyzed the second and third *Sullivan* prongs because it focused on identification and the court did not individually analyze how any other acceptable purposes of the evidence were relevant and that the probative value of the evidence substantially outweighed the danger of unfair prejudice.  Arevalo-Viera asserts that because he

10

did not challenge his identity as the person with M.D., the probative value of the Kenosha evidence is diminished and the risk of unfair prejudice is heightened.[5]

¶25     The State argues that the trial court did conduct the relevant analysis. The record reflects that the court responded to Arevalo-Viera's trial counsel's statement that identification was not at issue, discussed absence of mistake, motive, and intent and how that was related to method of operation, and concluded that the other acceptable purposes "comport[ed] with the very same analysis." Therefore, we reject Arevalo-Viera's broad argument that the court did not conduct a *Sullivan* analysis for the other acceptable purposes. Further, our inquiry would not stop if we concluded that the trial court failed to set forth its reasoning. In such a case, this court independently reviews "the record to determine whether it provides an appropriate basis for the [trial] court's decision." *John Hunt*, 263 Wis. 2d 1, ¶34.

¶26     For the second Sullivan prong, we consider relevancy. WISCONSIN STAT. § 904.01 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We make two inquiries. First, "whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action." *Sullivan*, 216 Wis. 2d at 772. Second, "whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make

---

[5] "The [S]tate must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements." *State v. Plymesser*, 172 Wis. 2d 583, 594-95, 493 N.W.2d 367 (1992). Therefore, Arevalo-Viera's admission that he was with M.D. that night does not negate the State's need to prove his identity as the defendant.

the consequential fact or proposition more probable or less probable than it would be without the evidence." ***Id.***

¶27     The record reflects that the trial court concluded that the Kenosha incident was relevant to the State's proffered purposes:  identity, motive, intent, and absence of mistake.   The State argued that the other-acts evidence demonstrated Arevalo-Viera's unique method of operation, which encompassed several acceptable purposes in WIS. STAT. § 904.04(2)(a).[6]  Although Arevalo-Viera appears to ask this court to see the purpose and relevance of the other-acts evidence to require discrete analysis, there is no such requirement in Wisconsin law.  *See* ***State v. Rutchik***, 116 Wis. 2d 61, 68, 341 N.W.2d 639 (1984) ("We conclude that the evidence of the prior crime established a definite method of operation and was therefore admissible to show preparation, plan, identity and intent.").   As our supreme court explained, "WISCONSIN STAT. § 904.04(2)(a) contains an illustrative, and not exhaustive, list of some of the permissible purposes for which other-acts evidence is admissible[.]"  ***Marinez***, 331 Wis. 2d 568, ¶18.  As has been often repeated, we do not require the trial courts to use magic words, but instead, to demonstrate rational decision-making.  *See* ***State v. Ziller***, 2011 WI App 164, ¶13, 338 Wis. 2d 151, 807 N.W.2d 241.  The record reflects that reasoning occurred here.

---

[6] Further, although Arevalo-Viera is not disputing his presence, he is disputing committing the charged conduct.  Our supreme court has recognized that evidence of method of operation falls under an identification purpose, discussing that evidence that shows "the alleged perpetrator's modus operandi, or mode or method of operation," may be admissible to prove the identity of the person who committed the charged conduct.  ***State v. Hammer***, 2000 WI 92, ¶24, 236 Wis. 2d 686, 613 N.W.2d 629.  "Method of operation, while not specifically enumerated in [WIS. STAT. §] 904.04(2), is one of the factors 'that tends to establish the identity of the perpetrator.'"  ***Hammer***, 236 Wis. 2d 686, ¶24 (citations and one set of quotations omitted).

¶28 Arevalo-Viera posits that identity had low probative value because he admitted he was with M.D. that night, offering an alternative, innocent explanation of a consensual encounter that ended unpleasantly when M.D. insisted on leaving his truck. However, Arevalo-Viera ignores that the question of identity is more than his presence, but asks who committed the charged conduct.

¶29 Other-acts evidence admitted for the purpose of identity looks at "a concurrence of common features and so many points of similarity with the crime charged that it 'can reasonably be said that the other acts and the present act constitute the imprint of the defendant.'" *State v. Kuntz*, 160 Wis. 2d 722, 746 467 N.W.2d 531 (1991) (citation omitted). "The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged." *Id.* at 746-47. The determination of similarity is "left to the sound discretion of the trial courts." *Id.* at 747.

¶30 Arevalo-Viera disputes the similarity between the Kenosha incident and charged counts, pointing out significant differences, namely no allegations of kidnapping, sexual assault, or robbery. However, our examination of the record indicates that the similarities strongly show the identity of the perpetrator: Arevalo-Viera and his co-actor travelled together in a pickup truck late at night. They followed a woman driving a car, at close distance, and pulled up beside her car. Arevalo-Viera exited the truck and approached the woman's car to attempt to make contact. Each woman felt threatened by Arevalo-Viera's approach. The events occurred just hours apart. We conclude that the similarity in "nearness of

time, place, and circumstance" demonstrate the "imprint" of the perpetrator of these acts. *See **Kuntz***, 160 Wis. 2d at 746-47.[7]

¶31    Turning to the exceptions for intent and motive, the State argues that the other-acts evidence was probative of the elements of the charged crimes. Although Arevalo-Viera initially argued that intent was not an issue in the sexual assault charges, he concedes that intent was an element in five of the seven counts: the three sexual assault charges based on sexual contact, kidnapping, and armed robbery. "The admissibility of [other-acts evidence] to prove motive 'is purely a function of relevance: How does the other act help the trier of fact to understand why the person acted as he [or she] did?" ***State v. Hurley***, 2015 WI 35, ¶71, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted). Therefore, the probative value of the other-acts evidence was that the Kenosha incident showed that Arevalo-Viera's motive and intent was not as he described, to get drinks with a woman, but shows it was more likely that Arevalo-Viera intended to gain access to M.D.'s vehicle and have non-consensual sexual contact with her.

¶32    Finally, Arevalo-Viera argues that the State's use of the "absence of mistake" purpose was in error. He asserts that this purpose is intended to dispute a defendant's claim that he committed the conduct by accident. However, his interpretation of this purpose is too narrow. "The exception of absence of mistake is closely tied to intent." ***State v. Gray***, 225 Wis. 2d 39, 56, 590 N.W.2d 918 (1999). "If a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will become improbable." ***State v.***

---

[7] A major difference between the two events is that Arevalo-Viera succeeded in entering M.D.'s vehicle and he was not successful in Kenosha. His failure in Kenosha does not diminish the similarity of the incidents or the probative value of the Kenosha evidence.

*Evers*, 139 Wis.2d 424, 443, 407 N.W.2d 256 (1987). "Other[-]acts evidence is properly admitted to show absence of mistake if it tends to undermine a defendant's innocent explanation for his or her behavior." *Gray*, 225 Wis. 2d at 56. Arevalo-Viera testified that his actions were innocent—that he saw the women in each scenario and wanted to have drinks. The young women's testimony of their terror and fear during their interaction with Arevalo-Viera in Kenosha demonstrated that it was more likely that his conduct was not innocent. We conclude that the other-acts evidence was probative to the question of whether Arevalo-Viera's conduct was intended to be benign or harmful to the women involved here.

¶33 Ultimately, we conclude that the second prong of Sullivan was satisfied for the proffered purposes of the other-acts evidence. The State had the burden to prove beyond a reasonable doubt the identification of the perpetrator of the charged crimes. "If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element." *State v. Hammer*, 2000 WI 92, ¶25, 236 Wis. 2d 686, 613 N.W.2d 629. Therefore, while the other-acts evidence has probative value to identify Arevalo-Viera as the person in the truck with M.D., we conclude that the probative value of the evidence was much greater when offered to identify Arevalo-Viera as the perpetrator of the charged conduct. We conclude that the four proffered acceptable purposes combine to show Arevalo-Viera's method of operation, which was highly relevant to the elements of the State's case. The other-acts evidence was relevant to show Arevalo-Viera's identity or imprint, his intent, his motive, and his lack of innocent mistake. *See* *Sullivan*, 216 Wis. 2d at 772. Additionally, the other-acts evidence had probative value to understand what happened on June 16, 2017. *See id.*

15

¶34 Next, we turn to the third *Sullivan* prong, whether the probative value was substantially outweighed by the danger of unfair prejudice. Nearly all of the State's evidence in a criminal case is prejudicial, so our inquiry is not whether there was simple harm to the defense, "but rather 'whether the evidence tends to influence the outcome of the case by improper means.'" *Hurley*, 361 Wis. 2d 529, ¶87 (citation omitted). Here, the trial court concluded that the other-acts evidence would not shock the conscience or horrify jurors, and under the balancing test, the probative value was not substantially outweighed by the danger of unfair prejudice, satisfying the third prong and WIS. STAT. § 904.03. Here, Arevalo-Viera fails to make a distinct argument about unfair prejudice beyond his position that the probative value was low because he did not contest identity.

¶35 We conclude that the trial court's analysis of the third prong considered the relevant facts under the proper standard of law and demonstrated rational decision making. *See John Hunt*, 263 Wis. 2d 1, ¶34. The probative value of the other-acts evidence was high, as shown above in our analysis of the relevance. Further, the trial court instructed the jury in three ways to reduce the danger of unfair prejudice—it gave two instructions to the jury prior to K.T. and S.J. testifying, and it gave an instruction during the final jury instructions. The trial court's instructions complied with the established process in Wisconsin law to "limit the possibility that the jury will convict based on 'improper means[.]'" *Hurley*, 361 Wis. 2d 529, ¶89 (citation omitted).

¶36 The record reflects that the trial court warned the jury not to consider the other-acts evidence as evidence that Arevalo-Viera had a certain "character or character trait" or to conclude that he was a "a bad person and for that reason is guilty of the offenses charged." Although Arevalo-Viera contends that the cautionary instructions were overbroad, he fails to explain how they fell short and

16

only speculates that they were ineffective. The reviewing court presumes that "juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other[-]acts evidence." *Marinez*, 331 Wis. 2d 568, ¶41. Therefore, we conclude that the third prong of *Sullivan* was satisfied by the trial court's analysis and safeguarded by the court's cautionary instructions to the jury.

¶37 To the extent that the trial court's analysis focused on identification alone as an acceptable purpose for the other-acts evidence, we conclude that any error was harmless. The probative value of the other-acts evidence to establish Arevalo-Viera's identity as the person in the truck with M.D. was limited because he did not deny being there. While Arevalo-Viera concedes that there was an acceptable purpose to the other-acts evidence under the first *Sullivan* prong, going so far as to admit those exceptions were "identity, intent, motive, and absence of mistake," he contends that the danger of unfair prejudice outweighed any limited probative value and the error was not harmless.

¶38 "The erroneous exclusion of testimony is subject to the harmless error rule." *State v. James Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." WIS. STAT. § 901.03(2). "To assess whether an error is harmless, we focus on the effect of the error on the jury's verdict." *State v. Weed*, 2003 WI 85, ¶29, 263 Wis. 2d 434, 666 N.W.2d 485. "The error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *James Hunt*, 360 Wis. 2d 576, ¶26 (citation omitted).

17

¶39    Our inquiry into harmless error in the evidentiary context relies on several non-exclusive factors.  *State v. Monahan*, 2018 WI 80, ¶35, 383 Wis. 2d 100, 913 N.W.2d 894.  Those factors include the "the frequency of the error;" the importance of the evidence to the State's case; "the presence or absence of evidence corroborating or contradicting the erroneously included … evidence;" the nature of both the defense and the State's case; and "the overall strength of the State's case." *Id.*

¶40    Here, our primary consideration is the overall strength of the State's case.  The State presented overwhelming evidence of Arevalo-Viera's guilt.  It presented detailed testimony from M.D. about the kidnapping and assault, and then provided corroborating, consistent testimony via the cell phone location data, the surveillance camera footage, the DNA evidence, the 911 call, the SANE testimony, and M.D.'s descriptions of the events to the witness she first encountered; the semi-truck driver, the security guard, Pleasant Prairie police, the SANE examination, and lastly, the MPD's investigative officers and detectives.

¶41    Further, the other-acts evidence was presented in a limited fashion, with cautionary instructions, and it was used by the State to corroborate the other evidence in the case.  Additionally, Arevalo-Viera's testimony in defense did not deny an encounter with the young women in Kenosha.  When reviewed overall, there is no possibility that a rational jury would have found Arevalo-Viera not guilty, if the other-acts evidence had been excluded from the trial.

## CONCLUSION

¶42    For the reasons stated above, we conclude that the trial court acted within its discretion when it admitted the other-acts evidence of the Kenosha incident.  Our examination of the record supports that the three prongs of *Sullivan*

were satisfied. The evidence was offered for acceptable purposes: identity, intent, motive, and absence of mistake, to show Arevalo-Viera's method of operation. The other-acts evidence was relevant to the State's case. The probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. To the extent that the court's focus on identification as an acceptable purpose was in error because Arevalo-Viera admitted to being with M.D. or that any of the other-acts evidence was not properly admitted, we conclude any error was harmless.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

No.    **2021AP1937-CR(C)**

¶43    DUGAN, J.  (*concurring*).  Consistent with the rule that an appellate court should decide cases on the narrowest possible grounds, I concur with the Majority's conclusion that even if the trial court erred in admitting the other acts evidence, any error was harmless.  *See* Majority, ¶¶37-41; *see also **State v. Castillo***, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").  Therefore, I do not join in the Majority's analysis and decision related to the merits of whether the court erred in admitting the other acts evidence.